## 𝖂𝖞𝖙𝖍𝖊𝖛𝖎𝖑𝖑𝖊.

## TALIAFERRO V. DAY.

### JUNE 17th, 1886.

WILLS—*Construction—Case at bar.*—Property was bequeathed to L. for her life, with power to apportion same at her discretion, between T. and D. By her will, L. provided thus: "Said property I leave to T. and D." (D. was then a child aged two years). "When this child is old enough to be sent to school, I wish T. to educate and give her $5,000 as her portion." T. accepted the bequest, but did nothing towards fulfilling the charge until D. was ten, when, by, &c., she brought her bill for construction of the will and payment of what she was entitled to under it. She was a non-resident, but had a guardian in this State, where the property is. An account was directed of the amounts coming to her for her portion and education, and of the time when they bore interest. Report showed that her education should begin at five and continue till she was eighteen, and that $216 from five to ten, and $226 from ten to eighteen years of age, should be allowed her annually for education, and that the property bequeathed to T. was worth $14,230. Upon T.'s exceptions—

HELD:

1. The value of the property is immaterial. T. accepted the bequest *cum onere.*
2. Directing the account and the payment of a moderate sum to the domestic guardian for immediate educational purposes, before in terms construing the will, was not improper, but was, in effect, a partial construction.
3. From five to eighteen is the scholastic period fixed by the general free school system of the State, and is reasonable.
4. D.'s portion became payable and interest-bearing on the day of her arrival at five years of age, and her annual allowances for education, respectively, on that same day and on each successive anniversary thereof, until her arrival at eighteen years of age.

Argued at Richmond, decided at Wytheville.

Appeal from two decrees of circuit court of Orange county, rendered respectively October 6, 1883, and October 2, 1884, in a chancery cause therein pending wherein Mary Louisa Day, an infant, by her next friend, Thomas P. Wallace, was complainant, and Charles C. Taliaferro was defendant.

The object of the suit was to construe the wills of B. F. Taliaferro and of his widow, Mrs. Louisa C. Taliaferro, and ascertain and compel payment to the complainant of the amounts she was entitled to receive as her portion of the estate, and the allowances made under the will of the latter for her education.

The decrees being adverse to the defendant, he obtained an appeal and *supersedeas* from one of the judges of this court.

Opinion states the case.

*J. G. &. W. W. Field,* for the appellant.

*Kemper & Martin* and *I. H. Carrington,* for the appellee.

RICHARDSON, J., delivered the opinion of the court.

Benjamin F. Taliaferro departed this life, in the county of Orange, in the year 1855, seized and possessed of a valuable tract of land known as "Mount Sharon," situated in said county, containing 711 acres, with personalty thereon of value. The said Taliaferro left a widow, Mrs. Louisa C. Taliaferro, but it seems no children. He left, also, a will by which, after several bequests to other persons, not material to this controversy, and, after the usual provision for payment of debts, he disposed of the entire residue of his estate as follows: "I give and bequeath to my beloved wife all the remainder of my estate, both real and personal, with all profits arising there-

from, to be used and enjoyed by her during her natural life. I wish my wife to have the privilege of selling all or any of my real or personal estate that she may think proper to sell, and invest the proceeds in other property. And I further give to my wife the privilege of apportioning my estate, as she may elect, between the three children of my brother Charles—Jane, Robert, and Charles—to be divided between the three according to her own discretion." And he appointed his said wife his executrix, and his friend, Philip B. Jones, executor, and requested that no security be required of them.

Mrs. Louisa C. Taliaferro took charge of, held and enjoyed the estate under the will of her husband for many years before her death, which occurred in 1875. She left a will by which, after disposing of her own estate to her nephews and nieces, she executed the power of apportionment conferred by her husband's will in this language: "The property my husband left me a life estate in I leave to Charles C. Taliaferro and Mary Jane Day—Jane Day's child. When this, child is old enough to be sent to school, I wish Charles to educate and give her ($5,000) five thousand dollars as her portion of this estate."

Of the beneficiaries in remainder mentioned in the will of Benjamin F. Taliaferro, Robert, a soldier in the Confederate army, was killed or died, intestate, unmarried and childless, leaving as his sole heirs-at-law the other beneficiaries, his sister, Jane, and his brother, Charles C. Taliaferro, the appellant. here, called in the will of Benjamin F. Taliaferro, simply Charles Taliaferro. Jane, mentioned in the will of Benjamin F. Taliaferro, was several times married, last to Henry C. Day, and she died during the life tenancy of Mrs. Louisa C. Taliaferro, leaving only one child, Mary Louisa Day, the appellee, called by mistake, in the will of Mrs. Taliaferro, Mary Jane Day, she being then a mere infant, living in the State of Georgia, and had never been seen by the testatrix, Mrs. Talia-

ferro. Mrs. Jane Day, the mother of the appellee, Mary Louisa Day, died in September, 1873, when the said Mary Louisa was only five weeks old. Mrs. Louisa C. Taliaferro executed the power of apportionment under her husband's will, by her own will, dated in 1875, and died, her will having been admitted to probate in June, 1876.

Early in her childhood, the appellee, Mary Louisa Day, accidently received a very serious injury, which made her a cripple for life—so serious that she is unable to walk without the use of a "splint." She has remained with, and been cared for, by her father, a poor man living on a small salary, who seems to have done everything in his power for his afflicted child. She was, at the institution of this suit, about ten years old, and has received from her uncle, Charles C. Taliaferro, no part of her patrimony, nor anything in aid of her education and maintenance. It seems that the personal estate of Benjamin F. Taliaferro was consumed during the life tenancy of Mrs. Louisa C. Taliaferro, leaving only for apportionment, under the will of her husband, the valuable real estate aforesaid, of which said Charles C. Taliaferro was in possession at the death of Mrs. Taliaferro, as lessee, and he has ever since had the exclusive possession, use, and enjoyment thereof, under the will of Benjamin F. Taliaferro, in virtue of the apportionment made by Mrs. Louisa C. Taliaferro.

In February, 1883, by her next friend, the appellee, Mary Louisa Day, filed her bill in the circuit court of Orange county, setting forth substantially the aforesaid facts, and seeking to recover her rights under the wills aforesaid. In her bill, among other things, she says: "Your oratrix further shows that she was born on the 24th of August, 1873; that, at the filing of this bill, she is approaching the age of ten years; that for several years she has been 'old enough to be sent to school,' and has needed, as she now needs and claims, the means for being edu-

cated, which the will of Mrs. Louisa C. Taliaferro provides for her, and she insists that the sum of $5,000, named in said will, should also be paid over to her guardian, together with all due arrears of interest thereon, and that all sums so provided for her are subsisting charges and liens on the said estate, and, as such, ought to be enforced." And disclaiming all idea of criticising the motives of said Charles C. Taliaferro, of whom she speaks as a gentleman entirely worthy of her respect and affection, yet, in her bill, she insists that he has erred, and erred to her detriment, in having failed, as he has, either to perform the requirements of said wills, or to procure the judicial construction thereof. And the bill further alleges that the estate has long since been fully administered, and there being no outstanding debts against it, and no one interested therein except herself and said Charles C. Taliaferro, no other persons need be parties to the suit; and the prayer of the bill is, that said Charles C. Taliaferro be made a party defendant, and required to answer, &c.; that he be required to perform fully and effectually the provisions of the said wills in favor of said oratrix; that the means of education and the fund of $5,000 therein provided for her, be paid over to her lawful guardian, with all interest thereon, and that the said estate be subjected thereto; that such education be furnished her as befits her station in life, and, among other things really not material, she asks that said wills, so far as they affect her case, be judicially construed, and for general relief.

Charles C. Taliaferro being a resident of the State of Georgia, was proceeded against by order of publication, and the cause being matured, a decree was entered on the 5th day of May, 1883, requiring Charles C. Taliaferro to pay to James W. Morton, the guardian, in Virginia, of the said Mary Louisa Day, the sum of $350, to be held and used by him in the education of his said ward; and the cause was referred to a master to

take and report an account showing what amount is proper to be allowed for the education of said Mary Louisa Day under the will of Louisa C. Taliaferro, and, further, what amount is due to her and ultimately payable under said will, and from what time the same should bear interest.

The master returned his report September 25th, 1883, in which he reported that the education of Mary Louisa Day should have commenced on the 24th of August, 1878, she being then five years old, and that in fixing this age as the time when she should be sent to school he was guided by the public school system of the State; and he further reported that the $5,000, required by the will of Mrs. Taliaferro to be paid by Charles C. Taliaferro to Mary Louisa Day, should bear interest from the said 24th day of August, 1878, the time at which she became five years of age.   To this report both parties excepted.

The cause was again heard at the October term, 1883, when, without passing upon the exceptions to the said report, the same was recommitted, with directions to ascertain and report what property, real and personal, passed under the will of Louisa C. Taliaferro, deceased, under the power given her under the will of her deceased husband, to the child of Jane Day, and to Charles Taliaferro, and the value of each kind; and also what would be a reasonable allowance per annum for the education of said child, taking into consideration her age, health, her estate and condition in life.

At the same time Charles C. Taliaferro filed his answer. After admitting the facts aforesaid touching said wills, he insists that the true construction of the will of Mrs. Louisa C. Taliaferro confers upon him the duty, right and privilege of educating Mary Louisa Day, and that the principal sum of $5,000 will become payable only when said education shall have been completed, or the said Mary Louisa shall marry or

attain the age of twenty-one years; and he says it is his purpose to give to said Mary Louisa the same opportunities and facilities for education that he would his own child, and will use his best judgment and discretion in selecting the best schools for that purpose. And insisting that his construction of the will of Louisa C. Taliaferro is the true one, and that said former decree requiring him to pay to the guardian of Mary Louisa Day the sum of $350 was erroneous, asked that the decree be set aside, and the said sum refunded to him.

In obedience to the decree of the 6th of October, 1883, the master made his report, ascertaining said "Mount Sharon" tract of land to contain 711½ acres, worth $20 per acre, amounting to $14,230. And he further reported, that he was unable to ascertain any personalty for distribution. He also reported an account showing what would be a reasonable per annum allowance for the education of said Mary Louisa Day, which account itemized, is as follows, to wit:

| | | |
|---|---|---|
| Thirteen dollars per month for board for a child from the age of five years to ten, - - - - | $156 00 | |
| Five dollars a month for ten months for academic and musical education, | 60 00 | |
| | | $216 00 |
| Thirteen dollars a month for board for a year for same from the age of ten years to eighteen, - - - | $156 00 | |
| Seven dollars a month for ten months for academic and musical education, | 70 00 | |
| | | $226 00 |

To this report Charles C. Taliaferro excepted only in so far as the master fixed the value of the land at $20 per acre, which is claimed to be excessive.

At the October term, 1884, of said circuit court the case was heard, when, without in terms construing said wills, a decree was entered overruling the exception of Charles C. Taliaferro to said report, and confirming same, and further decreeing that the complainant recover of the defendant the sum of $6,532, with interest on $5,216, part thereof, from the 24th day of August, 1878; and interest on $216, part thereof, from from the 24th day of August, 1879; with interest on $216, part thereof, from the 24th day of August, 1880; with interest on $216, part thereof, from the 24th day of August, 1881; with interest on $216, part thereof, from the 24th day of August, 1882; with interest on $216, part thereof, from the 24th day of August, 1883; and with interest on $226, the residue thereof, from the 24th August, 1884, until paid.

And the court further decreed, that the plaintiff recover of the defendant, annually thereafter, the sum of $226 for the years ending on the 24th day of August, 1885, 1886, 1887, 1888, 1889, and 1890, the recovery to be subject to a credit of $350 as of June 13, 1883, the amount paid to James W. Morton, guardian of Mary L. Day, under said former decree. And from the decrees aforesaid, the cause is here on appeal.*

It is first objected that the decree of May 5, 1883, is erroneous, because the court below ordered the accounts therein referred to to be taken without first judicially construing the will of Louisa C. Taliaferro.

It is true, the questions involved in the construction of the will were legal questions to be passed upon by the court, so as to interpret the will according to the true intention of the testatrix, as derived from the intrument itself, and, also, looking to the will of her husband, Benjamin F. Taliaferro, under which Mrs. Taliaferro was executing a power thereby conferred.

But we are unable to perceive upon what principle the decree could be held to be erroneous because the court deferred construing the will until accounts were taken, which, in the estimation of the court, might render material aid in construing the will. The question necessarily is not what lights and aids the court resorted to, but whether the construction given be the true one, the final action of the court being its judicial determination, the true tests of which are fidelity and accuracy. The objection, therefore, cannot be sustained.

It is also objected that the court directed the master to enquire and report what amount was proper to be allowed the plaintiff for the purpose of education, under the will of Louisa C. Taliaferro, it being insisted that the will, properly construed, gives to the appellant, Charles C. Taliaferro, the right to superintend the education of the appellee, Mary Louisa Day, and to exercise his judgment and discretion as to her education. This contention is wholly untenable, and would seem to rest upon the groundless assumption that, by the will of Louisa C. Taliaferro, the appellant is made the testamentary guardian of Mary Louisa Day. The will does nothing of the kind; nor had Mrs. Taliaferro any authority to appoint a testamentary guardian for Mary Louisa Day, such authority being the creature of the statute, and exercisable only by a father. See Code 1873, ch. 123, § 1. Moreover, it may be readily seen that the reference complained of would, when responded to by the master's report, necessarily afford the court essential aid, as the expenses of educating a ward, under such circumstances, must be measured by her means and social position. It is obvious, too, that counsel for the appellant, in their petition, overlook the fact that in referring these matters to a master, the court was practically construing the will all the time. In fact, as we shall see when we come to consider these wills, they so plainly express the intention of the testator in the one case, and

of the testatrix in the other, as to render it entirely unnecessary to resort to technical rules of construction. It is also objected that the said decree is erroneous because it directed the appellant, a resident of Georgia, to pay to James W. Morton, the guardian of Mary Louisa Day, in Virginia, the sum of $350, when said Mary Louisa was herself a resident of the State of of Georgia.

It does not appear whether this ward has a guardian, other than her father and natural guardian, in the State of Georgia, nor is it material whether she has or not. This minor, though living in another State, has estate here, and a guardian was properly appointed in the county of Orange, in this State. Section two, same chapter. And having been duly appointed and qualified, such domestic guardian is entitled to the custody of the ward's estate (see section 7); but the father being alive, he is entitled to the custody of her person, *ib.* Nor will the estate thus lawfully in the custody of the domestic guardian be transferred to the custody of any foreign guardian, except upon regular proceedings had for the purpose in the proper court of this State. (See Code 1873, ch. 125, sec. 3.) There is, therefore, no merit in the objection that this sum of $350 was directed to be paid to the guardian in Virginia. In fact, the decree in this respect further illustrates the fact that in each of said directions the court was in effect construing said wills, or, rather, giving practical effect to their plain provisions.

Such are the objections taken to the decree of May 5, 1883, none of which are valid. As to the next decree—that of October 6, 1883, which was also a decree of reference, and practically a repetition of the former decree, in the main—the same objections, so far as applicable, are made. They need not be further referred to. This brings us to the consideration of the decree of October 2, 1884, and this involves the main question in the case.

The master reported that Mary Louisa Day was old enough to be sent to school when she became five years of age, which occurred on the 24th day of August, 1878; that $216 per year from the age of five until she became ten years of age was a reasonable allowance for her educational expenses, including board; and from the latter age until she should arrive at the age of eighteen, $226 per year was reported as a reasonable allowance. The master reported also that he was unable to ascertain whether any personal estate passed by the will of Mrs. Taliaferro, under the power conferred upon her by the will of her husband, Benjamin F. Taliaferro, and reported only the tract of land called "Mount Sharon," containing 711½ acres as so passing, which was reported as of the value of $20 per acre, amounting to $14,230.

The only exception to this report was, that the valuation of the real estate was excessive. The court overruled this exception, confirmed the report, and decreed accordingly against the appellant. In other words, the decree holds that the principal sum—$5,000—apportioned by the will of Mrs. Taliaferro to Mary Louisa Day, and required to be paid to her by Charles C. Taliaferro, was payable on the 24th day of August, 1878, the time at which said Mary Louisa arrived at the age of five years, and requires the payment of same, with interest, from that date; and, in addition thereto, the decree requires that said Charles C. Taliaferro should pay annually, for the education of said Mary Louisa Day, for the years from 1878 to 1882, inclusive, the sum of $216, with interest on said annual payments, respectively, from the 24th of August of each year, and for each of the years 1883 and 1884 the sum of $226, with interest as aforesaid; and the same sum for each year thereafter, ending on the 24th of August, until 1890, when said appellee will arrive at the age of eighteen.

Such being in substance, the decree, it is insisted that it is erroneous. 1st. Because these sums of money are decreed against the appellant without first, in direct and explicit terms, construing the will of Louisa C. Taliaferro; 2d. Because the age of five years, the period fixed by the decree, and from which the appellant is charged with the costs of education, is too early for a child to be separated from its parents, or from those · standing in *loco · parentis,* and sent off to school; 3d. Because it is a personal decree against the appellant, when the land is primarily bound, and should have been so subjected. We are of opinion that neither of these objections are valid. This will plainly appear by a brief glance at the two wills in question.

The testator, Benjamin F. Taliaferro, after several bequests to other persons, not necessary to be noticed here, by his will says: "I give and bequeath to my beloved wife all the remainder of my estate, both real and personal, with all profits arising therefrom, to be used and enjoyed by her during her natural life. I wish my wife to have the privilege of selling all or any of my real or personal estate that she may think proper to sell, and invest the proceeds in other property. And I further give to my wife the privilege of apportioning my estate, as she may elect, between the three children of my brother Charles—Jane, Robert, and Charles—to be divided between the three according to her own discretion."

This language of the testator is plain and unambiguous. Its meaning is in no sense obscure or uncertain. It fully and concisely expresses the ·intention—the will of the testator— and leaves no room for resort to artificial rules of construction. The testator thus created a very broad, but not an unlimited trust, the execution of which he confided to his wife, Mrs. Louisa C. Taliaferro. After the special bequests referred to, which in no wise affect the question here, he gave his wife the

entire residue of his estate for her life, with the privilege of selling any or all of it; and having thus superadded the privilege of selling, the effect of which was to invest the life tenant with the legal title, the testator added the qualifying words, "and invest the proceeds in other property," thereby clearly excluding all idea of enlarging the life interest into an absolute estate, and indicating, too, that after the expiration of the life estate, the ultimate ownership and enjoyment should pass to others; and then, in conclusion, he specifically designates Jane, Robert, and Charles, the three children of his brother Charles, as the ultimate objects of his bounty, and imposes upon his wife the further trust of apportioning and dividing the estate between them according to her own election and discretion. The plainly expressed testamentary intention was that his wife should succeed him to a qualified ownership of his estate, and that she should be placed in his stead, with respect to the enjoyment of the property for her life, and the apportionment thereof amongst the three children of Charles Taliaferro, to wit: Jane, Robert, and Charles, and to be divided between *them*, in such shares as she might elect in the exercise of her own untrammelled discretion; thus confiding to his wife the same parental discretion, which, if living, it would have been the testator's province to exercise. The result of all which is, that Mrs. Louisa C. Taliaferro took an estate for life in all the said residue of her husband's estate, and was invested with the legal title thereto, not in her own absolute right, but in trust in aid of the purposes of the testator, as expressed in his will; and that Jane, Robert, and Charles took respectively vested interests in remainder in fee in such shares as should be apportioned to them by Mrs. Taliaferro under the power conferred by her husband's will. *Harrison* v. *Harrison's Adm'r*, 2 Gratt. 1; *Martin's Adm'r* v. *Kirby*, 11 Gratt. 67; *Rowlett* v. *Rowlett*, 5 Leigh, 20; *Hansford* v. *Elliott*, 9 Leigh, 79 and

94; *Brent* v. *Washington,* 18 Gratt. 588; *Corbin* v. *Mills,* 19 Gratt. 472.

Mrs. Louisa C. Taliaferro lived and enjoyed her life estate for many years, and before her death made her will, by which, after disposing of her own estate to her nephews and nieces, she executed the power under her husband's will in this language: "The property my husband left me a life interest in, I leave to Charles C. Taliaferro and Mary Jane Day—Jane Day's child. When this child is old enough to be sent to school, I wish Charles to educate and give her $5,000 (five thousand dollars) as her portion of this estate."

Robert and Jane, two of the beneficiaries mentioned in the will of Benjamin F. Taliaferro, both died during the life tenancy, the former unmarried, intestate and childless; the latter married, but intestate, and leaving the appellee, Mary Louisa Day, an infant only a few weeks old, the only child to which she ever gave birth. This child, therefore, through her mother, took under the will of Benjamin F. Taliaferro a vested interest in the estate devised for life to Mrs. Louisa C. Taliaferro. See *Harrison* v. *Harrison's Adm'x,* and other authorities cited above. And when Mrs. Taliaferro, the life tenant, came to execute the power under her husband's will, there were none except the appellant, Charles C. Taliaferro, and the appellee, Mary Louisa Day, between whom she could lawfully apportion the estate; she, therefore, leaves it to these two, requiring the appellant, when the appellee "is old enough to be sent to school," to educate and give her $5,000 *as her part of the estate.*

The only possible question that could arise is, at what time, under the will of Mrs. Taliaferro, is Mary Louisa Day's share of the estate payable to her? It is a vested interest in remainder, and would, ordinarily, take effect in possession at the death of the life tenant. But the power of apportionment

vested in Mrs. Taliaferro was without limitation, except that the estate could not be parcelled out to strangers; and, as the value of each share was necessarily dependent upon the manner of apportionment, and the time when to be received, it may be said that it was fairly within the power, under the circumstances of this case, for Mrs. Tailiaferro to give the land, as in effect she did, to Charles C. Taliaferro, charged with the payment by him to Mary Louisa Day, of her portion at such future time as, in the exercise of a prudent discretion, would seem best to her.

It is insisted that the will of Mrs. Taliaferro, properly construed, gives to Charles C. Taliaferro the right to control the education of Mary Louisa Day at his discretion, and that the principal sum—$5,000—is not payable by him until, in the exercise of his own discretion, her education is completed. Such would be a strained and unnatural construction, and one not warranted by the language of the testatrix—a construction that would unreasonably and unjustly postpone the enjoyment by Mary Louisa Day of her share in the estate until after her educational period, when, during that time, she must necessarily incur heavy expenses over and above those purely educational, and when, to meet such expenses, she had no source to look to except her share of this estate. This contention comes from giving too much prominence to grammatical arrangement of the words "educate and give," &c., and relying upon the fact that the period of education must necessarily run through a series of years; and, as the requirement to pay the $5,000 comes after the words "to educate," and is coupled therewith by the copulative conjunction "and," the appellant brings himself to the conclusion that the payment of the principal sum is postponed until the end of the educational period, and that the beginning and end of such period is entirely within his discretion. So far from intending to lodge with

Charles C. Taliaferro any such discretionary power, the testatrix, in the concluding line of her will, and immediately following the clause in respect to this estate, says: "The foregoing I wish carried into effect by my executors herein named—Robert M. Carter and Dr. E. P. Taliaferro."

But, returning to the testamentary intention of Mrs. Taliaferro, what is the plain common-sense meaning of her language—"when this child is old enough to be sent to school, I wish Charles to educate and give her $5,000 as her portion of this estate?" She evidently intended that the principal sum should be paid when Mary Louisa Day was old enough to commence going, or to be put, to school, so that the annual profits, at least, would then be available; and she further intended that from that time Charles C. Taliaferro should pay the annual charges for education. Mrs. Taliaferro did not, by her will, fix the age at which Mary Louisa Day should be put to school, nor did she fix any particular sum for the education of this child. These matters were properly and necessarily referred to a master for report. The master, taking as his guide the age at which by law all the children of the Commonwealth are admitted to the public free schools, reported that Mary Louisa Day should have been put to school when five years old. This is entirely unobjectionable. The master also reported, upon full evidence taken before him, what would be fair and reasonable annual allowances for education, and there was no exception. The court having thus before it the necessary information, confirmed the report and decreed accordingly. The decree is, in every respect, responsive to the plain requirements of the will, and results, necessarily, in a construction of the will of Mrs. Taliaferro; hence the objection that the will was not construed, and the construction specifically embodied in the decree, must be treated as without merit.

As to the objection that the valuation of the real estate was excessive, it need only be said that the question of value does not enter into the case. It is not pretended that the appellant did not accept the apportionment made by Mrs. Taliaferro in her will. The acceptance is admitted. The election was made with full knowledge of all facts and circumstances necessary to intelligent choice. In such case, the well established rule is, that the party thus accepting a legacy, coupled with a condition, binds himself to the performance of the condition, although the burden may exceed the benefit. *Hill* v. *Houston's Ex'or*, 15 Gratt. 357.

Nor is there any thing in the objection that the decree is a personal decree. In 3 Jarman on Wills, page 494, note, it is said: "Not only is a devisee accepting a devise charged with a legacy personally liable for its payment, but the land devised is liable for debts before the legacy so charged." Citing *Hoover* v. *Hoover*, 5 Penn. St. 351. Such, too, is the doctrine of this court. See *Vanmeter's Ex'ors* v. *Vanmeter*, 3 Gratt. 142, and authorities there cited; also *Glenn* v. *Clark*, 21 Gratt. 35.

The circumstances of this case strongly commend the appellee to the protecting care of a court of equity. When about one year old she became a cripple for life. Mrs. Taliaferro was aware of this misfortune when, by her will, she executed the power of apportionment conferred by her husband's will, and was, doubtless, moved to provide amply for this unfortunate child; and had she apportioned to her even more liberally than she did, the act would have been most commendable and clearly within the power conferred. Five years of the life of this otherwise helpless cripple, which should have been devoted to her education, have been lost to her, and in all that time she has received no educational aid from Charles C. Taliaferro, nor any aid whatever from the principal bounty provided for her; yet Charles C. Taliaferro has been all

the time in the exclusive possession and enjoyment of this fine estate, and now claims that her education is, under the will of Mrs. Taliaferro, a matter left entirely to his discretion. It would require but a few years more of such discretion, as that already exercised by him, to put this helpless girl beyond the period of life when that mental training and culture may be acquired, which is so essential to the alleviation of the pain and mortification which ever attend and weigh upon the unfortunate and deeply sensitive cripple.

The decrees complained of give the appellee nothing to which she is not entitled, and the same must be affirmed.

DECREES AFFIRMED.