# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## Va. Fire & Marine Ins. Co. v. Buck & Newson.

### December 14th, 1891.

| | |
|---|---|
| 88 | 517 |
| 90 | 293 |
| 90 | 778 |
| 88 | 517 |
| 93 | 684 |
| 88 | 517 |
| 95 | 771 |
| 88 | 517 |
| 99 | 33 |
| 99 | 403 |

1. PRACTICE AT COMMON LAW—*General issue—Special pleas—Matters of defence.*
Under the pleas of *non-assumpsit,* and *nil debet,* any matter of defence
whatever is admitted which tends to deny defendant's liability to the
plaintiff's demands, except the statute of limitations, bankruptcy and
tender, which do not contest the owing of the debt, but merely that an
action can be maintained for it. And notwithstanding Code, § 3264
allows defendant to plead as many matters of defence as he chooses, yet
it does not give him the "absolute right" to his special pleas setting up
defences admissible under pleas already received; and the court may
strike out such special pleas though already admitted, and issue joined.

2. ACTIONS ON INSURANCE POLICIES—*Evidence.*

HELD:

>Not error to refuse to allow defendant on cross-examination to ask a
>witness who had before testified that he had been employed as
>night watchman, how much he was paid.

3. IDEM—*Other policies.*—Defendants not entitled to inquire whether a person
obtained "other insurance" for plaintiff without having first proved
such person was plaintiff's agent.

4. IDEM—*Warranty—General rule.*—The rule is that the court never construes
a warranty as promissory and continuing, if any other reasonable con-
struction can be given. And where the question was: "How long have
you been merchandizing, and who sleeps in the store"? and the answer
was: "Four years; watchman on premises at night;"

HELD:

>Answer amounted to warranty that a watchman was on the premises
>at time of application; and not that he would be kept there in the
>future.

5. IDEM—*New trial—Case at bar.*—Considering the evidence in the record,
under the rule of § 3484;

HELD:

>No error in refusal to set aside verdict and award new trial.

Error to judgment of circuit court of Montgomery county, rendered November 25th, 1890, in the action on a policy of insurance wherein Buck & Newson, were plaintiffs, and the appellant, the Virginia Fire and Marine Insurance Company, was defendant.    Opinion states the case.

*W. W. & B. T. Crump*, for plaintiff in error.

*Burks & Campbell*, for defendant in error.

HINTON, J., delivered the opinion of the court.

This was an action on the case in *assumpsit* on a policy of insurance.    Issue was joined on the plea of *non-assumpsit*, and the defendant company, in accordance with a practice common in the circuit courts of this state, obtained leave to file special pleas within sixty days.

The effect of granting leave to file these pleas in the clerk's office is two-fold : It gives the defendant additional time within which to plead, and it gives the plaintiff timely notice of the defence to be set up, and thus prevents surprise and delay at the succeeding term.    In these respects the practice is convenient.    It seems, however, to have no other advantage, since the clerk can only receive and file the pleas, and the plaintiff cannot reply or demur to the pleas and make up an issue.

Three special pleas were filed in the clerk's office.    To the first of these no objection was made ; but the plaintiffs, treating the other two as tendered by the filing in the clerk's office, moved the court to reject them, which was accordingly done. The defendant then tendered a fifth plea, which, on the plaintiff's motion, was also rejected.

The rejection of these three pleas constitutes the first assignment of error.    Upon this point we shall spend but little time, because, in the opinion of the court, every fact might have been proved under the general issue in the case which

could have been proved under either of these pleas. Their rejection, therefore, could not have prejudiced the defendant.

"The fact is undeniable," says Mr. Minor, in his Institutes, "that for more than a century past there has been admitted, under the plea of *non-assumpsit* in all actions of *assumpsit,.* whether founded on an implied or express promise, any matter of defence whatever (the same as in the case of *nil debit*) which tends to deny his liability to the plaintiff's demand." 4 Min. Institutes, p. 645. And at page 641 of the same volume the author says: "Under the plea of *nil debit* the defendant may prove at the trial coverture when the promise was made, lunacy, duress, infancy, release, arbitrament, award and satisfaction, payment, a want of consideration for the promise, failure or fraud in the consideration, and, in short, anything which shows there is no existing debt due. The statute of limitations, bankruptcy and tender are believed to be the only defences which may not be proved under this plea, and they are excepted because they do not contest that the debt is owing, but insist only that no action can be maintained for it." And to the same effect seem to be all the authorities. 1 Chitty on Plead. (4th Amer. Edition), § 18; Stephen Plead. (4th Amer. Edition), p. 162, note 20; 1 Rob. (old) Prac. 210; 5 Rob. Prac. 259.

Nor can this court assent to the proposition that the statute, which allows the defendant to plead as many matters of defence as he may elect, confers upon him the "absolute right" to file special pleas setting up defences covered by a plea already received. Such a construction of the statute would be inconsistent with the authorities already cited, and, so far as we can see, could serve no good purpose. This same suggestion seems to have been made in *Fant* v. *Miller*, 17 Gratt. 47; but, said Joynes, J., "I think the object of the (special) plea was to set up the defence that the plaintiffs were not *bona-fide* holders of the note on which the action was founded. That defence, however, might have been made, as, in point of fact, it was made under the plea of *nil debit*, which issue had already been joined

in 1853. The plea was, therefore, wholly unnecessary, and this would have been good ground for rejecting it when offered if it had been objected to. *Reed* v. *Hanna's Ex'or*, 3 Rand. 56. And it was competent for the court to strike it out after it was received, even though issue had been joined upon it. *Kemp* v. *Mundell*, 9 Leigh, 12. The plaintiffs in error not having been deprived of any defence by the striking out of this plea, have not been injured by it, and cannot complain. The multiplication of issues, by special pleas, tends to embarrass the jury, and ought not to be encouraged, 'except in cases where, by law, the defence would otherwise be excluded or rendered unavailing.' "

It is suggested, however, if we correctly apprehend the brief of the plaintiff in error, that the plaintiffs below ought to have demurred to those pleas, " if insufficient in law," and should not have moved the court to reject them. But this, as the defendants in error point out in their brief, is generally an unsafe practice. The better way, undoubtedly, being to move the court, when it has not been received, to reject it. In *Reed* v. *Hanna's Ex'or*, 3 Rand. p. 62, the court said : " Where the objection to a second plea  *  *  *  is that the matter of that plea is already put in issue, the party ought not to be put to the hazard of a demurrer in order to avail himself of that objection, the proper and safe practice being to try that question on a motion to reject the plea, or to strike it out, if it has been entered on the record."

The next assignment of error is that the court declined to permit the defendant to ask, on cross-examination, the witness Wilkes, who had previously testified that he had been employed as night-watchman and paid for his services as such, how *much* he was paid. But we perceive no error in this action of the court. The jury could not measure the watchman's diligence by the amount of his pay. The real inquiry was whether he was *employed* by the plaintiffs and acted under such employment; and that question was submitted to the jury.

The next objection seems equally groundless. The defend-

ant clearly had no right to go into the inquiry whether or no the firm of Johnson & Co. had obtained "other insurance," for the plaintiffs in violation of a provision of the policy sued on, without having established that they were the plaintiff's agents, or at least had satisfied the court that they would subsequently do so.

Passing over several minor exceptions, which seem to be fully answered by the facts of the case, we come now to what may be regarded as the most formidable objection to the action of the circuit court, viz.: that it erred in giving the following instruction :

"That if they believe from the evidence that the policy in suit was based on a written application authorized by the plaintiffs or either of them, said application thereby became a part of said policy, and the answer to the eighteenth question in said application is a warranty on the part of said plaintiffs that a watchman was kept on the premises at night. But what constitutes a "watchman" within the meaning of said application is a matter of fact to be determined by the jury. And if they believe from the evidence that at the time of said application the plaintiffs had such watchman on the premises at night and continued to keep one in their employment on said premises at night continuously from that date until the destruction of the property by fire on January 23d, 1888, then there was no breach of said warranty, although they believe from the evidence that on night of the fire the watchman was, without the knowledge or consent of the plaintiffs or either of them, absent from the premises."

The great fact relied on by defendant as its ground of defence being that the watchman who usually slept on the premises was absent on the night of the fire, it is insisted that the instruction tells the jury, in effect, that after they shall have found that there was a warranty of a watchman on the premises at night, and have determined the meaning of the word "watchman," as used in the application, and that such watch-

man was kept on the premises, that yet the law dispensed with his presence on the night of the fire, unless his absence was known to the plaintiffs. We do not think the instruction fairly susceptible of this construction. That instruction, it is true, left it to the jury to determine what constituted a watchman within the meaning of the application, and then declared that if the plaintiffs had such watchman on the premises at the time of the application and continued to keep him in their employment on the premises from that date until the destruction of the property by fire, then there was no breach of the warranty. And this was going further than the defendants need have gone. It certainly, however, could not have hurt the defendants, and did not intimate that the defendants would be excused if the warranty was found to be promissory and continuing. And moreover, it was just and proper in the circumstances of this case, where, as we shall proceed to show, the warranty was merely affirmative.

Warranties, says Mr. May, are distinguished into two kinds : affirmative, or those which allege the existence at the time of a particular fact, and avoid the contract if the allegation be untrue ; and promissory, or those which require that something shall be done or omitted after the insurance takes effect, and during its continuance, and avoid the contract if thing to be done or omitted be not done or omitted according to the terms of the warranty. May on Insurance, § 157 ; *O'Neil* v. *Ins. Co.*, 3 N. Y. 122. And the rule is that the courts will never construe a warranty as promissory and continuing, if any other reasonable construction can be given. *Blood* v. *Ins. Co.*, 12 Cush. 472 ; *Schmidt* v. *Ins. Co.*, 41 Ill. 295 ; *Horsford* v. *Germania Fire Ins. Co.*, 127 U. S. 399 ; *Aurora Ins. Co.* v. *Eddy*, 55 Ill. 213 ; *Gates* v. *Ins. Co.*, 1 Seld. 469 ; *May* v. *Ins. Co.*, 25 Wis. 291 ; *Stout* v. *Ins. Co.*, 12 Iowa, 371 ; *U. S. F. & M. Ins. Co.* v. *Kimberly*, 34 Md. 224 ; *Frisbie* v. *Ins. Co.*, 27 Penn. St. 325, and other cases too numerous to mention.

Without reference to this last-mentioned rule, however, we

think it perfectly plain that the answer to the eighteenth question in the application amounted only to a statement that the plaintiffs had in their employ a watchman, whose usual place for sleeping was on the premises. Now, this statement is merely affirmative of the usual and existing state of things, and has nothing promissory as to the future. That such is the case seems to us clear from the circumstances under which the answer was made. The question was : " How long have you been merchandising, and who sleeps in the store, and what clerks are employed ? " To which the answer in the application, written admittedly by the defendant's agent and not signed by the plaintiffs or either of them, is " Four years; watchman on premises at night." The question, as the plaintiffs say in their brief, manifestly relates to the present and not to the future. It was intended to get information as to the present state of things, and not to exact a promise that such state should continue.

It is only necessary to add that the court did not err in refusing to set aside the verdict and grant a new trial. The case being before us as upon a demurrer to evidence, we must exclude the evidence of Kelsey, the agent of the defendant, to the effect that the answer to the question first mentioned was authorized by the plaintiffs, and we must, therefore, take the fact to be, as Mr. Buck says it was, that no such statement or reply was authorized.

We see no error in the judgment of the circuit court, and the same must be affirmed.

JUDGMENT AFFIRMED.