87 N.J. Super. 157 (1965)
208 A.2d 422
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, PLAINTIFF-APPELLANT,
v.
MARIE FALCIANI, GENERAL ADMINISTRATRIX OF THE ESTATE OF EUGENE R. LATTANZI, DEFENDANT-CROSSCLAIMANT-APPELLANT-RESPONDENT, AND THE ESTATE OF DOUGLAS A. VEALE, GEORGE C. HINSON, ROMEO LATTANZI AND MARYLAND CASUALTY COMPANY, DEFENDANTS, AND NATIONAL GRANGE MUTUAL INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 23, 1964.
Decided March 23, 1965.
*159 Before Judges GAULKIN, FOLEY and COLLESTER.
Mr. William P. Doherty, Jr. argued the cause for National Union Fire Insurance Company (Mr. David L. Horuvitz, attorney).
Mr. James P. MacLean, III argued the cause for Marie Falciani, general administratrix of the estate of Eugene R. Lattanzi (Messrs. Archer, Greiner, Hunter & Read, attorneys; Mr. Angelo J. Falciani, attorney).
Mr. Frank F. Neutze, Jr. argued the cause for the estate of Douglas A. Veale and Maryland Casualty Company (Messrs. Taylor, Bischoff, Neutze & Williams, attorneys).
Mr. Michael A. Orlando argued the cause for National Grange Mutual Insurance Company (Mr. Samuel P. Orlando, attorney).
The opinion of the court was delivered by GAULKIN, S.J.A.D.
On January 2, 1961 Douglas A. Veale was driving a 1940 Ford coupe owned by Romeo Lattanzi *160 when he ran into a tree. Veale and Eugene R. Lattanzi, son of Romeo, were killed; the other passenger, George C. Hinson, was injured.
National Union Fire Insurance Company (National Union) had issued a "Family Combination Automobile Policy" covering Romeo Lattanzi from April 4, 1960 to April 4, 1961. National Grange Mutual Insurance Company (National Grange) had issued a policy covering Romeo Lattanzi from February 7, 1960 to February 7, 1961. Maryland Casualty Company had issued a policy covering Douglas A. Veale.
National Union instituted this action for a declaratory judgment, seeking to be exonerated from all liability with reference to the accident, or, in the alternative, to have National Grange declared a co-insurer. Romeo Lattanzi and those claiming damages because of the accident resisted National Union's effort to be relieved of liability, and also sought to have National Grange declared a co-insurer. Maryland Casualty took the position that National Union and National Grange were primary insurers and its policy was excess insurance. The Chancery Division adjudged that the policy of National Union insured Veale and Romeo Lattanzi with reference to the automobile involved in the accident, but that the policy of defendant National Grange did not, and therefore National Grange was free of liability. It held that the policy of Maryland Casualty was excess insurance. National Union appeals, and those seeking damages as a result of the accident cross-appeal from the exoneration of National Grange.
There appears to be no challenge of the holding that the policy of Maryland Casualty Company is excess insurance, and that holding is affirmed. We affirm, also, that portion of the judgment which holds that the National Union policy covers, for the reasons stated by Judge Wick. However, we hold the National Grange policy also covers, and that National Grange is a primary co-insurer with National Union.
The automobile which was involved in the accident was acquired by Romeo Lattanzi about December 15, 1960. Those claiming the benefit of the National Grange policy (including *161 Romeo Lattanzi) contended that the automobile was automatically covered as soon as it was acquired because the policy provided:

"Condition No. 2
Premium If the named insured disposes of, acquires ownership of or replaces a private passenger, farm or utility automobile or, with respect to Part III, a trailer, he shall inform the company during the policy period of such change. Any premium adjustment necessary shall be made as of the date of such change in accordance with the manuals in use by the company. The named insured shall, upon request, furnish reasonable proof of the number of such automobiles or trailers, and a description thereof."
For brevity, hereafter we shall call this provision "Condition 2."
National Grange admits in its brief that under Condition 2 "the named insured has the right to extend coverage to after-acquired or substitute automobiles by giving notice to the company during the policy period." However, it argues that the insured has the option not to submit a newly acquired automobile for coverage, and that here Romeo Lattanzi had elected, before the accident, not to have National Grange cover the automobile.
The evidence shows that in December 1960, after Lattanzi purchased the automobile, he went to Bertram E. Harper, the agent of National Union, and arranged for the National Union policy to cover it. In addition, he arranged with Harper for National Union to take over the insurance on the two automobiles described in the National Grange policy when that policy expired, on February 7, 1961. Lattanzi did not notify National Grange of the acquisition of the automobile prior to the accident. Indeed, we find no evidence in the record to indicate when National Grange first learned of the acquisition of the automobile, or whether it was "during the policy period."
National Grange argues that the foregoing facts show clearly that Lattanzi elected not to have its policy cover this automobile, and therefore there was no contract between Lattanzi and National Grange to cover it. We disagree.
*162 There is nothing in the evidence to show that Lattanzi understood that Condition 2 provided coverage for after-acquired vehicles, and that he knowingly rejected the coverage. Therefore, we need not pass upon the question whether a knowing election not to avail himself of coverage, not communicated to the insurer, debars an insured from thereafter claiming the coverage.
The facts in the case at bar are similar to those in Imperial Casualty & Indemnity Co. v. Relder, 308 F.2d 761 (8 Cir. 1962). In that case the policy contained Condition 2. The policy period was from August 12, 1959 to August 12, 1960. In October 1959 Relder purchased a new automobile but made no report thereof to Imperial Casualty & Indemnity Company. Instead, he obtained a policy from Home Indemnity Company covering the new automobile. In June 1960 the automobile was involved in an accident. The court held that the Imperial Casualty & Indemnity Company policy covered, saying:
"* * * The construction of this contract should be upon the basis of the written contract itself and not upon any subjective intention of the parties. Many individuals acquiring or purchasing insurance policies do not know and are not aware of the extent of coverage of such policies. [at page 763]

* * * * * * * *
Appellant's primary contention is that the intent of the parties, as shown by their actions, was that the policy should not provide coverage for the after-acquired 1959 Oldsmobile which was involved in the collision. Appellant directs attention to the fact that when Relder acquired the 1959 Oldsmobile approximately two months after the issuance of the policy with which we are here concerned he did not advise the appellant; that instead he called the agent of another insurance company and directed insurance on the 1959 Oldsmobile from Home Indemnity Company; that he at no time reported to the appellant or its agent the acquisition of the 1959 Oldsmobile until subsequent to the accident of June 19, 1960; that in answer to the question, `Was it your intention that the policy of insurance issued by the Imperial Casualty & Indemnity Company cover the 1959 Oldsmobile?', he stated, `Well, I didn't intend that it did or that it didn't.'; and that he had not intended to pay the Swade agency [appellant's representative] additional premium for the 1959 Oldsmobile. [at page 764]

* * * * * * * *
*163 The meaning of condition 2 in the policy with which we are here involved seems to us open and clear. It requires no construction, strained or otherwise. It is not susceptible of different interpretations. Each of the three possibilities described  that is, if the named insured `disposes of, acquires ownership of or replaces a private passenger * * * automobile'  are separate and distinct and refer to automobiles the insured may `dispose of,' `acquire ownership of,' or `replace.' That two or more automobiles are contemplated by the policy is also made clear by the sentence `The named insured shall, upon request, furnish reasonable proof of the number of such automobiles * * * and a description thereof.'
The policy provides for notice to the company only `during the policy period of such change,' an extremely liberal provision which undoubtedly the appellant used in its sales advertising by drawing comparison with standard policies requiring notice of change, acquisition or replacement of automobiles within a much more limited period. Further, the policy provided, `Any premium adjustment necessary shall be made as of the date of such change in accordance with the manuals in use by the company.'
Appellant argues that to construe automatic coverage herein would throw the door open to possible fraud against the company by persons who acquired additional automobiles during the policy period but would not report them unless they became involved in an accident. There is indeed that possibility, but the policy is the appellant's own handiwork. The remedy, if it desires one, is obvious. [at page 765]

* * * * * * * *
It may well be that the insured was unaware of the fact that he had purchased additional or `other insurance' as it is referred to in appellant's policy. That does not obviate the fact that the policy that he purchased and paid for on August 12, 1959, extended coverage to after-acquired automobiles and that no notice thereof to the company needed to be given excepting only within the policy period and that he was liable for the additional premium thereon dated from the time of the acquisition of the additional automobile. [Emphasis ours; at page 766] * * *."
See also Gunther v. Metropolitan Casualty Ins. Co., 33 N.J. Super. 101, 109 (Law Div. 1954); Bauman v. Royal Indemnity Co., 36 N.J. 12, 21 (1961).
National Grange argues that, in any event, coverage on the newly acquired automobile was excluded because the policy bore the following endorsement:

"MORE AUTOMOBILES THAN OPERATORS

(New Jersey)
In consideration of the reduced premium rates at which this policy is written, it is understood and agreed that the insured [sic] does not *164 insure more automobiles than those described in this policy, and that the majority of the usage of the described automobiles will be that of One automobile(s) only, operated on the highway at one time.
It is further understood and agreed that, if at any time the majority of the usage or the purposes for which the automobiles are used, as described in the Declarations, are changed, the insured will give notice to the company and make payment of proper additional premium therefor." (Emphasis ours)
Since this endorsement refers to the "Declarations," we reproduce them here.

*165 We find the endorsement exasperatingly bewildering. We can only guess at what the insurance company intended it to mean. The only thing about the endorsement that we are sure of is that no layman can understand it.
It is not clear to us whether National Grange argues that the endorsement meant that it would insure only the 1953 Ford and the 1955 Chevrolet described in the Declarations, or that it meant that the company would not insure more than two automobiles. In either case, if that is what the company intended, why did it not say so? It would have been easy to say so in simple language.
Instead, the endorsement said "it is understood and agreed that the insured does not insure more automobiles than those described in this policy." (Emphasis ours) Insureds do not insure  insurance companies do. Perhaps the language of the endorsement was intended to be colloquial, because many people say "I insured my automobile." If that be the case, the quoted words could only mean to the policyholder that he was certifying that he had not obtained any insurance on any other automobiles from this or any other company. They could not mean to him that he was warranting never to own more than two automobiles, or to seek coverage on them. Note that paragraph 4(a) of the Declarations says, "The total number of private passenger, farm and utility automobiles owned on the effective date of this policy by the named insured does not exceed one, unless otherwise stated herein." (Emphasis ours) The Declarations showed that Lattanzi owned two automobiles "on the effective date" of the policy. Condition 2 plainly meant that, no matter how many automobiles were declared in the Declarations, the insured was given permission to acquire more automobiles, and the insurance was extended to them.
Condition 2 was not negated by the words of the endorsement "the insured does not insure more automobiles than those described in this policy." Reading those words in the light of the balance of the policy, as we must, we construe them to mean, at most, that when the policy was issued the *166 insured had not obtained insurance on automobiles other than those described in the policy. It was not an agreement that thereafter there would be no such insurance, or that the benefit of Condition 2, giving automatic coverage to newly acquired or substitute vehicles, was waived. In short, we hold that, if the quoted words constituted a warranty, it was an affirmative and not a promissory warranty. Procacci v. United States Fire Insurance Co., 118 N.J.L. 423, 425-6 (E. & A. 1937). "As a general rule, the courts hesitate to construe a warranty as promissory and continuing, and will refuse so to do if any other reasonable construction can be given." 7 Couch on Insurance (2d ed. 1961) § 36:5, p. 303; Virginia Fire & Marine Ins. Co. v. Buck, 88 Va. 517, 13 S.E. 973, 974 (Sup. Ct. App. 1891); Hosford v. Germania Fire Ins. Co., 127 U.S. 399, 8 S.Ct. 1199, 32 L.Ed. 196 (1888); Mayor, Lane & Co. v. Commercial Casualty Ins. Co., 150 N.Y.S. 624 (Sup. Ct. 1914), affirmed as to this point but modified on other grounds, 169 App. Div. 772, 775, 155 N.Y.S. 75 (App. Div. 1915).
If it be the argument of National Grange that the endorsement limited the coverage to the 1953 Ford and 1955 Chevrolet described in the Declarations, it would eliminate coverage even of vehicles which might replace the two described. On the other hand, if the argument be that the endorsement meant to limit the coverage to two vehicles, without regard to the specific ones described in the Declarations, then the endorsement says no more than the Declarations, and is not inconsistent therewith or with Condition 2.
As the court pointed out in Imperial Casualty & Indemnity Co. v. Relder, supra, 308 F.2d, at p. 766, it is interesting to note that "under Part III, Physical Damage, the policy provides that it does not apply `(d) to loss to a private passenger, farm or utility automobile or trailer owned by the named insured and not described in this policy or to any temporary substitute automobile therefor, if the insured has other valid and collectible insurance against such loss.'" This is a further *167 indication that the policy was intended to cover vehicles not described in the Declarations.
It is established beyond the need for citation of authority that ambiguities in a policy are to be construed against the company, and that construction should be adopted which gives the insured and those injured claiming through him the widest possible coverage. If the automatic coverage afforded by the rest of the policy was to be taken away by the endorsement, it should have been "so clearly phrased that `he who runs can read.'" As Justice Jacobs said for a unanimous court in the Bauman case, supra, 36 N.J., at p. 21:
"* * * [T]he insurance company designated its insurance policy as a comprehensive personal liability policy and sold it to the policyholder as such. The designation was a very broad one and while the company had the undoubted right to exclude particular types of personal liability from the so-called comprehensive coverage, its responsibility was to do so unequivocally. Cf. Mohawk Valley Fuel Co. v. Home Indemnity Company, 8 Misc.2d 445, 165 N.Y.S.2d 357, 363 (Sup. Ct. 1957). In all fairness to the ordinary layman who is the average insured, an exclusion clause should be so prominently placed and so clearly phrased that `he who runs can read.' See Lord St. Leonard in Anderson v. Fitzgerald, 4 H.L.C. 484, 510, 10 Eng. Rep. 551, 561 (1853). In recent years our courts, stressing the need for clarity and forthrightness in insurance policies (Elcar Mobile Homes, Inc. v. D.K. Baxter, Inc., 66 N.J. Super. 478 (App. Div. 1961)), have repeatedly adopted liberal constructions of policy provisions which were obscure, ambiguous or uncertain. See Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, 35 N.J. 1, 7 (1961); Kievit v. Loyal Protect. Life Ins. Co., 34 N.J. 475, 482 (1961); Hunt v. Hospital Service Plan of N.J., 33 N.J. 98, 102 (1960). In the Hunt case, Justice Francis expressed the pertinent principles of judicial construction which we now reiterate:
`The quest for the significance of language employed in an insurance contract is always engaged in with certain basic tenets in mind. Wherever possible the phraseology must be liberally construed in favor of the insured; if doubtful, uncertain, or ambiguous, or reasonably susceptible of two interpretations, the construction conferring coverage is to be adopted. And exclusionary clauses of doubtful import are strictly construed against the insurer, Boswell v. Travelers Indemnity Co., 38 N.J. Super. 599, 605 (App. Div. 1956); Schneider v. New Amsterdam Cas. Co., 22 N.J. Super. 238 (App. Div. 1952).' 33 N.J., at pp. 102-103."
*168 So construed, we find nothing in the endorsement which cancels the automatic coverage of after-acquired automobiles afforded by Condition 2.
We turn then to the balance of the endorsement, "that the majority of the usage of the described automobiles will be that of One automobile(s) only, operated on the highway at one time."
To begin with, the described automobiles were the 1953 Ford and the 1955 Chevrolet described in the Declarations. Whatever the "majority of the usage" of these automobiles may mean, it did not change. Therefore, we need not decide what is meant by "the majority of the usage * * * will be that of One automobile only, operated on the highway at one time," or how that "majority" is to be calculated, and over what period of time. These words are obviously ambiguous. Compare the difficulty that the court had with the word "principally" in Sutton v. Hawkeye Casualty Co., 138 F.2d 781, 785 (6 Cir. 1943). Certainly, the mere fact that Romeo and his son occasionally were on the highway at one time, or even at the moment of the accident, would not breach the warranty. Even as construed by National Grange, it seems that this would have to happen a "majority" of the time, to violate the endorsement. Suppose the son used the newly acquired automobile mostly while the father was at work, in the foundry in which he was a foreman, and not driving? These are some of the questions which occur to us. We do not attempt to answer them, but we feel obliged to point out the ambiguity of this language because we question whether the record would support a finding of breach of warranty even if National Grange's interpretation of the endorsement were accepted.
The second paragraph of the endorsement does not relate to a change "in the usage of the described automobiles," covered by the first paragraph, but to a change in "the majority of the usage or the purposes for which the automobiles are used, as described in the Declarations * * *." The only description of usages and purposes contained in the Declarations *169 is found under 4(a), to wit, "private passenger, farm and utility automobiles." "Owned automobile" is defined as "a private passenger, farm or utility automobile or trailer owned by the named insured, and includes a temporary substitute automobile," but that definition is set forth on page one of the policy and not in the Declarations. In any event, it adds nothing to the description. Therefore, it appears that "private passenger, farm and utility automobiles" was the "usage or the purposes for which the automobiles are used, as described in the Declarations." If so, there was no change in such usage or purposes. The 1953 Ford and the 1955 Chevrolet, mentioned in the Declarations, and the after-acquired automobile which figured in the accident, all were "private passenger, farm or utility automobiles."
National Grange argues that even if Condition 2 did afford such automatic coverage, it required notice to the company during the policy period of such change as a condition precedent to coverage, and, since Lattanzi did not notify it of the acquisition of the additional automobile "during the policy period," its policy does not cover.
We hold that the coverage of the newly acquired automobile was automatic and attached immediately upon the acquisition of the vehicle; notice, during the policy period, of the acquisition was not a condition precedent to coverage; Romeo Lattanzi immediately became liable for the additional premium; and the coverage was not forfeited by his failure to give the notice within the policy period or to pay the premium. 7 Appleman, Insurance Law and Practice § 4293, p. 87 (1962); Annotation 34 A.L.R.2d 936, 943-5 (1954); Inland Mutual Insurance Co. v. Stallings, 162 F. Supp. 713 (D.C. Md. 1958), affirmed 263 F.2d 852, 854 (4 Cir. 1958); Birch v. Harbor Ins. Co., 126 Cal. App.2d 714, 272 P.2d 784 (D. Ct. App. 1954); Merchants Mut. Casualty Co. v. Lambert, 90 N.H. 507, 11 A.2d 361, 127 A.L.R. 483 (Sup. Ct. 1940); Ash-Grove L. & P. Cement Co. v. Southern Surety Co., 225 Mo. App. 712, 39 S.W.2d 434, 439 (Mo. Ct. App. 1931); Imperial Casualty & Indemnity Co. v. Relder, *170 supra, 308 F.2d, at p. 766. Contra, Jamison v. Phoenix Indemnity Co., 40 F. Supp. 87 (D.C.N.J. 1941).
Note that Condition 2 provides that "The named insured shall, upon request, furnish reasonable proof of the number of such automobiles or trailers and a description thereof,"  a provision which seems to us intended to enable the company to collect the premium on all covered automobiles, even if not described in the policy.
National Grange argues that the automobile involved in the accident was not an "owned automobile" within the meaning of the policy because it was purchased by Lattanzi for the use of his son. We perceive no merit in this contention. Cf. Merchants Indemnity Corp. v. Eggleston, 37 N.J. 114, 123-124 (1962); Beasley v. Wolf, 151 So.2d 679 (Fla. D. Ct. App. 1963); Quaderer v. Integrity Mutual Insurance Company, 263 Minn. 383, 116 N.W.2d 605 (Sup. Ct. 1962).
For the foregoing reasons, we hold that National Grange was liable as a primary insurer, co-insuring with National Union. With this modification, the judgment is affirmed. No costs.