## Richmond.

### WILLARD v. WORSHAM.

April 13, 1882.

SUBROGATION—*Covenant of grantee of trust-deed debt.*—In 1859 S sold to C for $15,000 cash one-half of Hygeia Hotel, and they became partners in running it. Sale was subject to debt of $5,000, secured to W by deed of trust on hotel; this debt S and C agreed should be paid by them equally and jointly. It was in four instalments—first was paid by S before sale to W; second and third were paid by S and C; fourth remains unpaid. The hotel was destroyed in 1862 by Federal orders. S became and remains insolvent, and in 1864, without consideration, released C from all liability on the agreement to pay W's debt. On bill in chancery to collect this instalment from S and C—

HELD:

1. C, as grantee of half the trust property, assumed payment of half the trust-deed debt as part of the consideration, and became personally liable to W.

2. As between S and C, the latter is principal and former surety. W is entitled to all collateral securities held by his debtor, S, and hence may be subrogated to the benefit of the covenant of C with S to pay half the debt.

3. It may be that W, not being a party to the agreement between S and C, could maintain no action at law. His remedy is in chancery, where all the parties may be convened and the matter closed.

4. It is manifest that as between S and C, it was intended that the latter's liability should be for only one-half the debt.

5. The release of S to C, however effectual as between the parties, was and is invalid as to W.

6. *Quære:* Where grantee assumes payment of the mortgage debt for the indemnity of the mortgagor, and not for the better security of the mortgagee, can grantor release grantee so as to defeat mortgagee's right against the latter on his promise to pay the debt?

Appeal from decree of circuit court of Elizabeth City in suit of Henry C. Worsham's personal representative, for,

&c., against C. C. Willard and Joseph Segar, to recover balance of a trust-deed debt due by latter, and assumed by former to said Worsham, and to attach property of said Willard in said county and sell same to satisfy said balance. The circuit court decreed the payment by the defendants of the entire balance. From this decree C. C. Willard appealed. Opinion states the case.

*M. B. Seawell, John S. Wise* and *John Howard*, for appellant.

*L. R. Page*, for appellee.

STAPLES, J., delivered the opinion of the court.

On the 13th of October, 1859, Joseph Segar, in consideration of the sum of $15,000 cash, sold to the appellant, Caleb C. Willard, one-half of the Hygeia Hotel at Old Point Comfort. This sale included one moiety of the fixtures and improvements, furniture, implements, materials and stores of every description.

It was further stipulated that the parties should be equal partners in the hotel, and that Willard should have the entire management of the business, the control of the employees, the purchase of the supplies and the keeping the books and accounts.

The sale was made subject to a debt due Joseph C. and H. A. Willard, and a debt of about $5,000 due H. C. Worsham, .for the payment of which it was agreed the parties should be equally and jointly liable. It is conceded that Willard's undertaking to discharge one-half of these debts was a part of the consideration to be paid by him for the property. The debt due Worsham (the only one involved in this controversy) constituted a lien on the hotel, secured by a deed of trust. It had been divided into four annual instalments, due the 1st of September, 1858, 1859, 1860, 1861,

the first of which it seems was paid by Segar before the sale to Willard. The second and third instalments were subsequently paid by Segar and Willard. The fourth and last instalment has never been settled, and is the subject of this litigation. It is proper to state that the "Hygeia Hotel" was, in the year 1862, destroyed by the military authorities of the Federal government, and that Mr. Segar is now hopelessly insolvent, so that nothing can be realized out of him.

The sole question we have to determine is, whether the appellant is personally liable under his contract with Segar to the owners of the Worsham debt for the balance due them. The appellant's contention is, that his covenant to pay one-half that debt was with Segar exclusively, and for his indemnity only ; that Worsham was a stranger both to the contract and the consideration, and that he never accepted or agreed to accept the appellant in place of or jointly with Segar for the payment of the debt, and consequently he has no right of action against the appellant for its recovery. The appellant's further contention is, that by an agreement between him and Segar on the 1st of March, 1864, the partnership between them was dissolved, the debts in question were all assumed by the latter, and the appellant released from further payment.

The first point to be determined by us is whether Worsham can claim the benefit of the appellant's covenant with Segar; and second, what is the effect of the release upon the rights of the parties. After much discussion, and notwithstanding some diversity of judicial opinion, the rule seems to be now settled that a grantee of mortgaged premises, who has purchased subject to a mortgage for which his grantor was personally liable, and has assumed the payment of the mortgage debt as a part of the consideration, is personally liable to the mortgagee in a suit to foreclose the mortgage.

The amount allowed to the grantee out of the purchase money by reason of his assumption of the mortgage, is a fund in the hands of the grantee, applicable to the payment of the mortgage in exoneration of the grantor.

As between the grantor and grantee, the latter is the principal debtor, and the grantor is his surety, and the creditor or mortgagee, being entitled upon equitable principles to the benefit of all collateral securities held by his debtor, may resort by way of equitable subrogation to the covenant of the purchaser or grantee with the mortgagor. 1 Jones on Mortgages, § 755; Bayliss on Sureties and Guarantees, 490, 493.

But whatever may be the ground upon which the liability of the grantee of mortgaged premises to the mortgage creditor may be placed by different judges, it is now fully recognized and established by the current of authority in this country. It is the settled doctrine of the New York courts, as may be seen by reference to the cases of *Burr* v. *Beers*, 24 New York, 178; *Marsh* v. *Pike*, 10 Page, 595; *Blyer* v. *Monholland*, 2 Sandf. Ch'y Rep. 478; *Douglass* v. *Wells*, 18 Hun, p. 88, and cases there cited; *Trotter* v. *Hughes*, 2 Ker. 74, and also by the Pennsylvania decisions: *Hoff's Appeal*, 24 Penn. St. Rep. 205; *Lennig's Estate*, 52 Penn. St. Rep. 139; 2 Washburn on Real Estate, 193, 574. The case of *Blymire* v. *Boistle*, 6 Watts, 182, so much relied on by the appellant's counsel, is not at all in conflict with the others. In that case Sergeant, J., held that where a debt already exists from one person to another, a promise by a third person to pay such debt made for the benefit of the original debtor, would not confer a right of action at law upon the original creditor, for otherwise the party making the promise might be held liable to two actions—one by the original creditor, and the other by him to whom the promise was made. The learned judge said, however, the appropriate remedy was in chancery, which would give all the parties an op-

portunity of being heard, and close the controversy by a decree that would be binding on all.

The decisions of the New Jersey, Rhode Island, Vermont, Wisconsin, Iowa, Indiana and Michigan cases accord with that of New York and Pennsylvania. The cases are cited in 1 Jones on Mortgages, §§ 752, 755-6, and notes; and in Pollock's Principles of Contract, p. 199 and notes.

The only case in Virginia bearing directly upon the point is that of *Vanmeter's Ex'ors* v. *Vanmeter*, 3 Gratt. 148. Joseph Vanmeter, in consideration of an agreement on the part of his sons, Abram and Isaac Vanmeter, to pay all his debts, and also to pay him annually during his lifetime the sum of $500, conveyed to them a number of tracts of land in Virginia and Kentucky. The deed was not executed by the grantees, but they took possession of and held the lands under it. This court decided that not only were the lands bound in the hands of the sons, but they, having accepted the deed, were personally liable for the debts of the grantor, and that the creditors were entitled to enforce the covenant in a court of equity. One of the counsel for the appellant attempts to avoid the force of that decision by saying "that the covenant in the deed of the grantor there was a covenant running with the land, and that is the distinction between the liability of the grantees in *Vanmeter* v. *Vanmeter,* and that of the promisor in the personal covenant here." I am not able to perceive the force of this distinction, nor, indeed, precisely what is meant by the suggestion. A covenant is said to run with the land when either the liability to perform it, or the right to take advantage of it, passes to the assignee of the land. Of this kind are covenants for quiet enjoyment, covenants of warranty, and covenants for further assurance, which are prospective in their nature, descend to heirs and vest in assignees. A covenant by the grantee of mortgaged premises to pay the mortgage debt is a mere personal covenant; it

does not run with the land, and is binding only upon him who creates it. Such was the character of the covenant in *Vanmeter's Ex'ors* v. *Vanmeter.* Its object plainly was the relief and indemnity of the grantor, and not an additional security for the creditor. And yet, in the opinion of this court, it enured to the benefit of the latter, who were permitted to enforce it in a court of equity. That case would, therefore, seem a direct authority in this.

In *Ross* v. *Milne and ux,* 12 Leigh, 204, it was held that an action at law could not be maintained by a person who was not a party to the deed, although the covenant therein was for his benefit, and this upon the general principle that the right to sue at law, under an indenture or deed, *inter partes,* is confined to the parties to the instrument. The court, however, expressly declined to pass upon the question, whether such a trust or interest was created for the beneficiary as would entitle her to sue in equity.

The case of *Jones* v. *Thomas,* 21 Gratt. 96, merely announces the same general rule, that at common-law an indenture or deed *inter partes* is only available between the parties to it, and their privies and third persons can maintain no action of covenant thereon, although made for their benefit.

These cases do not touch the question of equity jurisdiction, in enforcing a covenant by the grantee of a mortgaged estate for the benefit of mortgagee or other creditor.

In a court of equity the mortgagee is allowed to take advantage of the grantee's covenant, because the latter thereby becomes the principal debtor for the mortgage debt, which has been allowed him out of the purchase-money. The grantor stands in the attitude of a mere surety, all of whose securities enure to the benefit of the creditor upon a principle of equitable subrogation. The rules governing the exercise of the equity jurisdiction are entirely different from those prevailing in courts of law, and cases prop-

erly controlling in one forum can have no authority in the other.

We come now to the consideration of the release. At the time it was executed, it is very probable, if not absolutely certain that Segar was utterly insolvent. It is stated to have been given for a valuable consideration; none however is set forth in the contract, nor attempted to be shown by evidence. Although the appellant's agreement was to pay one-half the Worsham debt, and although, according to his answer, he had never paid any part of it, yet in the deed of release it is cited that he had fully performed and complied with every agreement and obligation on his part to be observed and performed, growing out of the purchase and partnership. And notwithstanding the other partnership was dissolved and the appellant formally released from any liability, it was provided that the dissolution should not extend to or include the claim against the government of the United States for injuries done to *their* property at Old Point Comfort, in which claim it is declared they are equally interested. And thus it is, whilst the property which constituted the creditor's security for his debt is destroyed, and whilst the appellant is released of responsibity for the debt, he is permitted to retain and appropriate to his own use one-half the damages which represent the property, and which justly belong to the creditor for the satisfaction of his debt.

In a paper prepared by him in Washington city in 1868, setting forth the grounds of his complaint against the Federal government, he declares that at the time the hotel was destroyed a large amount was due in deferred instalments, and he and Segar, since the destruction of the hotel, had liquidated outstanding instalments to the amount of $35,000, and there is still due chargeable on them the amount of several thousand dollars more.

The Worsham debt is a part of the purchase-money con-

tracted to be paid by Segar for the hotel origina'ly, and must be one of the instalments referred to, and yet when the appellant is here denying his liability for any part of it, that liability is made in part the basis of his claim against the government for indemnity. But this is not all. By the terms of the partnership between the appellant and Segar, the former was entitled to the control and management of the business, and all the profits resulting from it. In the paper already referred to, the appellant declares that in the year 1860, a net income was realized from the hotel equal to the interest upon half a million of dollars. It does not appear what amount was realized in the years 1861 and 1862, down to the time of the destruction of the hotel. Whatever it may have been, the appellant was entitled to and no doubt received one-half of it. Under such circumstances the effort to release the appellant from all liability for debts, with respect to which he had agreed to be equally and jointly bound, is calculated to excite some suspicion of the good faith of the parties. Segar, who is hopelessly insolvent, generously assumes the entire responsibility, while the appellant pockets one equal share of the income and the profits, and one-half of the damages to be recovered from the Federal government. No case, I imagine, can be found in which, under the circumstances herein disclosed, it has been held that a release to the grantee would be binding on the creditor. I admit that the authorities are very conflicting upon this very perplexing question. In some of the cases it is held that where the grantee, by his contract, assumes the payment of the mortgage debt for the indemnity of the mortgagor, and not for the better security of the mortgagee, the parties may abandon the contract at any time they see fit, unless it appears that the mortgagee, relying upon the indemnity, has placed himself in a position from which he cannot retreat without loss, in case the agreement is not performed.

In other cases, it has been held that where the grantee has assumed the payment of the mortgage debt, and the mortgage creditor has notice of it, and assents to it, his right of action cannot be defeated or affected by a release to the grantee.

According to the New York cases, where the conveyance to the grantee is absolute and unconditional, in consideration of which he undertakes to pay the mortgage debt as a part of the purchase-money, the undertaking is irrevocable, and the mortgagee is at once vested with the right to enforce the covenant—a right which cannot be defeated by a rescission of the contract between the mortgagor and the purchaser. *Douglas* v. *Wells*, 18 Hun. p. 88, where the laws are cited. In New Jersey it has been decided that the. grantor or mortgagor has no right, in case of his insolvency, to divest himself, by a voluntary release of the covenant, of indemnity against his liability for the mortgage debt, to the prejudice of the mortgage creditor. A release by an insolvent mortgagor, without consideration, being regarded as in fraud of the rights of the creditor.

It seems to me there is great force in the doctrine held by the New York courts, because the grantee having assumed the payment of the mortgage debt, and retaining the absolute ownership and possession of the mortgaged estate, he to that extent diminishes the resources of the mortgage debtor and his means of payment, and he ought not to be permitted to evade a just responsibility by any acquittance or discharge obtained from the mortgage debtor. Whether he might do so, upon a rescission of the contract out and out, and a reconveyance of the estate before the rights of the creditor have been recognized or asserted, is another question not before us.

It is, however, unnecessary to decide which of the decisions cited lay down the correct rule, for this case presents nearly every feature or element which, according to the

authorities, stamps the release as invalid. The party giving
it was at the time, and is now, insolvent; the conveyance
or sale to the appellant was absolute and unconditional;
his assumption of one-half of the debt was a part of the
consideration of the purchase; he recognized the existence
of the debt itself by uniting with Segar in paying the two
instalments maturing in 1859 and 1860. The release was
without consideration, and was plainly and palpably de-
signed for no other purpose than to defeat a recovery against
the appellant of the claim now in controversy. For these
reasons, my opinion is, the release, however effectual as
between the parties, was and is invalid as to the appellee.

The remaining question is as to the extent of the appel-
lant's liability. In most of the cases found in the books,
the mortgaged estate is conveyed to the grantee with an
assumption on his part of the entire mortgage debt. In
such cases, the grantee's promise being to pay the whole
debt, there is, of course, no difficulty in holding him liable
to the full measure of his contract. Here, however, the
appellant purchased only one moiety of the hotel property,
and although his contract with Mr. Segar was that they
should be equally and jointly bound for the debts, it is
manifest that as between them it was understood that the
appellant's liability extended only to one-half.

The arrangement was not for the benefit of Segar's credi-
tors, or for the better security of their claims. It was for
the indemnity and security of Segar himself, the appellant
taking one-half of the property and assuming an equal
portion of the liabilities. To the extent of one-half the
debts, and only to that extent, could the appellant have
ever been required to contribute to the relief of his co-
partner. Such being the rights of the appellant and Segar
*inter se,* what are the rights of creditors against the appel-
lant? It has been already stated that where the grantee
of lands assumes the payment of a mortgage thereon, as

between himself and grantor, he becomes, in equity, the personal debtor, and the grantor the surety, and the latter may insist that the grantee shall pay the debt for his relief and protection. The creditor, upon familiar principles, may claim the benefit of all the collateral securities held by his debtor, by way of equitable subrogation. In doing so, however, he stands in his debtor's shoes, and is substituted to the rights and remedies of the latter, but nothing more. In other words, the new creditor takes the place of the old one, and succeeds to his rights. This doctrine is very clearly laid down in *Crowell* v. *Currier*, 27 New Jersey Eq. Rep. p. 154. It is there said, the right of a mortgagee to hold the purchaser of the equity of redemption for a deficiency, who assumes the payment of the mortgage by covenant to the mortgagee, does not rest on the theory of contract between the purchaser and the mortgagee, upon which an action at law may be maintained, but stands exclusively, according to an almost unbroken line of decisions, on the ground that the covenant of the purchaser is a collateral security obtained by the mortgagor, which by equitable subrogation enures to the benefit of the mortgagee.

It seems to me that this is the only clear and intelligible principle upon which the responsibility of the grantee of a mortgaged estate in cases like the present can be safely placed. According to this view, the appellant is liable for one-half the balance of the Worsham debt, and not for the whole amount, as decreed by the circuit court.

It is not necessary to remand the cause for any further account, because the commissioner to whom the matter was referred reported " that the second and third instalments were paid by Segar and Willard, after the co-partnership was formed, to the parties entitled. To this part of the report there was no exception by either of the parties, and it must therefore be taken as correct. The second

and third instalments having therefore been paid by Segar and the appellant in equal proportions, the fourth and last must of course be discharged in the same way. The decree of the circuit court is therefore to that extent reversed, and a decree now to be entered in conformity with the views herein expressed.

DECREE REVERSED.