Syllabus.

𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

HUBARD & APPLEBY, INC., V. J. ERNEST THACKER, ET ALS.

January 19, 1922.

Absent, Burks and Saunders, JJ.

1. MORTGAGES AND DEEDS OF TRUST—*Assumption of Mortgage Debt by Purchaser—Remedy of Mortgagee or Beneficiary in Deed of Trust Against Party Assuming Debt.*—Where a grantee of real property assumes a debt secured by a mortgage or deed of trust upon the property as part of the consideration of the sale, the rule in Virginia is that the mortgagee or beneficiary under the deed of trust cannot sue the grantee at law on his promise to pay the mortgage debt, but must resort to equity.

2. MORTGAGES AND DEEDS OF TRUST—*Assumption of Mortgage Debt by Purchaser—Remedy of Mortgagee or Beneficiary in Deed of Trust Against Party Assuming Debt.*—The promise of a grantee to assume a mortgage debt upon the property is not made for the benefit of the mortgagee, but solely for the benefit of the mortgagor. Hence, no action at law will lie by the mortgagee against the grantee; the ground of the refusal of a right of action at law being want of privity of contract.

3. MORTGAGES AND DEEDS OF TRUST—*Assumption of Mortgage Debt by Purchaser—Remedy of Mortgagee or Beneficiary in Deed of Trust Against Party Assuming Debt.*—Even in equity, as at law, the contract of a purchaser to pay a mortgage debt, being made with the mortgagor and for his benefit only, creates no direct obligation of the purchaser to the mortgagee.

4. MORTGAGES AND DEEDS OF TRUST—*Assumption of Mortgage Debt by Purchaser—Remedy of Mortgagee or Beneficiary in Deed of Trust Against Party Assuming Debt.*—But when the assent of the mortgagee has been given to the assumption of the mortgage by the grantee, equity, by a *quasi* subrogation, and in order to avoid a multiplicity of suits, gives to the mortgagee the benefit of all the collateral obligations for the payment of the debt which the mortgagor holds for his indemnity. The right of the mortgagee to proceed against the purchaser assuming the mortgage debt is not the result of any contract. The

equity on which this relief depends is the right of the mortgagor against his grantee, to which the mortgagee is permitted to succeed by substituting himself in the place of the mortgagor.

5. MORTGAGES AND DEEDS OF TRUST—*Assumption of Mortgage Debt by Purchaser—Remedy of Mortgagee or Beneficiary in Deed of Trust Against Party Assuming Debt—Time at Which Mortgagee Succeeds to Rights of Mortgagor Against Purchaser Assuming Mortgage Debt.*—A mortgagee succeeds to the right of his mortgagor against a grantee of the mortgagor assuming the mortgage debt when the mortgagee assents to the new relationship, or certainly when he both assents to it and the grantee has notice that he does so. The obligation of the grantee thereupon becomes irrevocable, so that after such acceptance the mortgagor has no longer any right to release the grantee from the obligation to the mortgagee.

6. MORTGAGES AND DEEDS OF TRUST—*Assumption of Mortgage Debt by Purchaser—Remedy of Mortgagee or Beneficiary in Deed of Trust Against Party Assuming Debt—Time at Which Mortgagee Succeeds to Rights of Mortgagor Against Purchaser Assuming Mortgage Debt.*—A contract for the assumption of a mortgage, on a sale of the mortgaged premises, may be rescinded or canceled between the parties to it, so long as the mortgagee has done nothing to show his adoption of the benefit of such contract or his acceptance of the purchaser as the principal debtor; and this may be accomplished either by a formal release or a revocation of the contract, or by a rescission of the contract of sale or reconveyance of the property. But after the mortgagee has accepted or adopted the contract, or acted upon the faith of it, it is not in the power of the parties, against his rights, to change or annul it.

7. MORTGAGES AND DEEDS OF TRUST—*Assumption of Mortgage Debt by Purchaser—Remedy of Mortgagee or Beneficiary in Deed of Trust Against Party Assuming Debt—Time. at Which Mortgagee Succeeds to Rights of Mortgagor Against Purchaser Assuming Mortgage Debt—Case at Bar.*—In the instant case the mortgagee dealt directly with the grantee assuming the mortgage, after knowledge on his part of the grantee's promise, and acted upon the faith of and relied upon that promise to the extent of giving the grantee an extension of time for payment of parts of the debt, and both mortgagee and grantee acted upon the grantee's promise to assume the mortgage debt in regard to payments made by the one and received by the other. *Held:* That by such action the mortgagee accepted and adopted the new promise as for his benefit, and acted upon it in such a manner as to notify the grantee of such acceptance; and that

thereupon the mortgagee's right against the grantee became fixed, and the reconveyance of the property thereafter by the grantee to the original mortgagor, and the assumption by the original mortgagor of the mortgage debt, did not operate to release the grantee from his liability to the mortgagee.

Appeal from a decree of the Circuit Court of the city of Norfolk. Decree for defendants. Complainant appeals. *Reversed, and final decree entered for complainant.*

The material facts in this case are that one Portlock executed a certain deed of trust, conveying certain real estate to secure the payment of a debt of $3,000.00 of himself to appellant, evidenced by three notes of the grantor, payable to the order of the appellant, one note for $300.00, payable December 3, 1913, another for $300.00, payable December 3, 1914, and the remaining note for $2,400.00, payable December 3, 1915; all of such notes bearing interest from date, payable semiannually, with the right of the debtor to anticipate the payment of any or all of such notes. Portlock paid $100.00 on the first mentioned note.

Thereafter, in the latter part of 1913, about the time the first note fell due, the appellee, Thacker, entered into negotiations to purchase the property from Portlock, upon the understanding that if the purchase was made Thacker would assume the payment of the deed of trust debt as a part of the purchase money. While these negotiations were under way, and before making the purchase, Thacker called upon the appellant to ascertain what at that time was the amount of the deed of trust debt, what part of it was due, the condition of the notes, interest due, etc. The secretary and treasurer of the appellant "showed Thacker the notes and * * talked the matter over" with him. Thacker asked for some additional time on the note which fell due December 3, 1913, in case he became the purchaser of the property. Appellant agreed to that, telling Thacker it would "be all right." The

secretary and treasurer of appellant testifies that appellant made that agreement of extension of time because they knew Thacker and were "mighty glad for him to take the property * * * because (they) thought he was a good deal more responsible than Mr. Portlock, who held it at that time." Thacker does not testify in the case, nor is there any evidence tending to controvert the truth of this statement. The purchase was accordingly closed by Thacker some time in January, 1914, by his taking a deed from Portlock and wife, dated December 23, 1913, conveying the property to him in which it was stipulated that "the said J. Ernest Thacker expressly assumes the payment of certain notes for three thousand dollars ($3,000) with interest from the date of these presents secured by deed of trust," etc. (describing the said deed of trust). Thacker did not sign the deed, but accepted it with such stipulation in it and thereafter dealt with the property as his own. The appellant was fully informed of all of this; and in accordance with the agreement aforesaid entered into between Thacker and appellant as to the extension of time of payment of the first note falling due, Thacker, in the spring or early summer of 1914, paid to appellant the $200.00 and accrued interest, balance due on the first $300.00 note, and subsequently the interest which had accrued up to June 3, 1914, on the other two notes. According to the uncontroverted testimony for appellant, the appellant dealt directly with Thacker in giving the aforesaid extension of time and in receiving the payments aforesaid, at his instance and request.

It further appears from the record that the attorneys for Thacker, in examining the title to the property, found a judgment for $1,037.00, with interest from December 22, 1895, of record against a former owner, which would not be barred by the statute of limitations until the first rule day in May, 1916. These attorneys thereupon wrote a letter to appellant of date January 15, 1914, calling attention to this

judgment of record and saying that they would like to have a letter from appellant, "stating that the last note secured in the deed of trust" (aforesaid, which note would fall due December 3, 1915, as aforesaid) "may be extended beyond the life of the judgment." Appellant replied by letter to these attorneys of date January 16, 1914, stating that appellant was "the holder of the notes secured in the deed of trust" aforesaid, designating it, and added: "We hereby agree to extend the time of payment of the principal of the last note secured by said deed, which note will be due December 3, 1915, to May 8, 1916." This dealing was directly with Thacker's attorneys at their instance and request, which was equivalent to such dealing directly with Thacker, and is so regarded in the opinion of the court.

The evidence in the record does not disclose whether Portlock was asked to consent or consented to the extensions of time aforesaid before or when they were made.

Thereafter, by deed of bargain and sale, of date August 22, 1914, Thacker and wife conveyed the said property to one Hethorn; the deed containing the express stipulation that Hethorn assumed the payment of the two of said notes then remaining unpaid, aggregating $2,700.00, "and interest;" Hethorn not executing, but accepting, the deed. Subsequently, Hethorn, by similar deed, of date September 16, 1914, conveyed the property back to Portlock; the deed containing the express stipulation that Portlock assumed the payment of the last-mentioned two notes "aggregating the principal sum of $2,700.00;" Portlock not executing, but accepting, the deed.

On December 3, 1914, the second note for $300.00 and the semiannual interest thereon and on the $2,400.00 note, from June 3, 1914, fell due; no part of which was paid. The appellant took no action in the matter until some time in June, or the early part of July, 1915, when, at appellant's request, and because of such default, the trustee in the deed of trust

aforesaid, duly advertised the property for sale on July 21, 1915, upon the terms of all cash, as he was authorized to do by the deed of trust.

On the day and at the place of sale the president of the appellant's corporation, before the property was put up at auction, saw a real estate agent, whom such president knew had represented Thacker in the purchase aforesaid of the property from Portlock and usually represented Thacker in his real estate transactions, and told such real estate agent that the property was going to be sold. Up to that time appellant thought that Thacker still owned the property and knew nothing of the subsequent conveyances of the property aforesaid. Appellant had been paid nothing on the debt by any one except Thacker since his purchase and assumption of the debt aforesaid, and appellant had looked upon Thacker as bound to it as principal debtor for the said $2,700.00 and interest thereon from the time Thacker purchased the property from Portlock and assumed the payment of the debt as aforesaid and, up to the foreclosure sale under the deed of trust, recognized and relied upon Thacker as the principal debtor.

Accordingly, the property was offered for sale at public auction on July 21, 1915, and was sold to appellant as the highest bidder at the price of $1,700.00. The trustee filed an account of the sale before the commissioner of accounts showing that after the payment of the expenses of the sale there was left of such purchase money the net balance of $1,512.15, which when applied to said $2,700.00 with interest from June 3, 1914, to July 21, 1915, left a balance of $1,-371.00, principal as of that date, of the said indebtedness remaining unpaid; and this is the amount which the appellant claims in this suit to be entitled to recover of appellee, Thacker.

On December 14, 1915, Portlock was adjudged a bankrupt; the funds derived from his estate amounted only to

$131.87, which was used to pay costs; and he received his discharge in bankruptcy May 7, 1917.

The bill in the cause was filed in July, 1918; made the said Thacker, Hethorn and Portlock parties defendant; and asserted the alleged personal liability of the said appellee, Thacker, to appellant for the deficiency aforesaid, as growing out of the facts and circumstances aforesaid.

The court below gave no effect to the dealings directly between the appellant and Thacker; considered the case as the same as those of *Crowell* v. *St. Barnabas Hospital,* 27 N. J. Eq. 650, and *Osborne* v. *Cabell,* 77 Va. 462, in which it was held that the mortgagee could not recover against a defendant grantee of the mortgaged property who had assumed the payment of the mortgage debt by taking a deed with that stipulation in it, where the defendant's immediate grantor, before suit brought, for valuable consideration and in good faith, had released the defendant from such assumption of payment; and the decree under review held that the appellant was not entitled to recover either against the appellee, Thacker, or Hethorn; that it appearing that Portlock had been adjudged a bankrupt the court would not proceed further against him; and the court dismissed the bill.

*Jas. G. Martin,* for the appellant.

*R. B. Spindle, Jr.,* and *T. D. Savage,* for the appellees.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

[1] This case is now before this court for the second time. The former appeal is reported as *Thacker* v. *Hubard,* 122 Va. 379, 94 S. E. 929. That appeal involved an action at law brought by Hubard and Appleby, Inc., against the same Thacker who is the appellee in the present appeal, based on

the same facts which appear in the record now before us, perhaps somewhat more elaborate in detail in the present record. On the former appeal, it was held that the action at law, based upon such a cause of action, did not lie. That the remedy of the complainant, if any, was by suit in equity, in accordance with the doctrine of *Crowell* v. *St. Barnabas Hospital*, 27 N. J. Eq. 650, 655-6; *Keller* v. *Ashford*, 133 U. S. 610, 624-5, 10 Sup. Ct. 494, 33 L. Ed. 667; *McIlvane* v. *Big Stony L. Co.* 105 Va. 613, 54 S. E. 473; *Willard* v. *Worsham*, 76 Va. 392; *Osborne* v. *Cabell*, 77 Va. 462, and other kindred cases cited. The rule that the remedy, in such case, is by suit in equity alone, prevails in America in only a comparatively few of the jurisdictions; in New Jersey, California, Virginia and in a few of the other jurisdictions, 2 Jones on Mortgages (7th ed.), secs. 761, 761a, 761b, 761c; and in some of these the rule is statutory.

[2-4] In accordance with the doctrine of *Crowell* v. *St. Barnabas Hospital* and *Osborne* v. *Cabell*, cited above, the promise of the grantee to pay the mortgage debt is not made for the benefit of the mortgagee, but solely for the benefit of the mortgagor. Hence, as it is held in these cases, no action at law will lie by the mortgagee against the grantee, the ground of the refusal of a right of action at law being want of privity of contract. Even "in equity, as at law," as is said in *Thacker* v. *Hubard*, quoting with approval from *Keller* v. *Ashford, supra* (133 U. S. 610, 10 Sup. Ct. 494, 33 L. Ed. 667), "the contract of the purchaser to pay the mortgage, being made with the mortgagor and for his benefit only, creates no direct obligation of the purchaser to the mortgagee." And, as is further said in *Thacker* v. *Hubard, supra* (122 Va., at p. 393, 94 S. E., at p. 932): "* * * no agreement between the mortgagor and his grantee that the latter shall assume the mortgage debt, can change the relations of the mortgagor and mortgagee, and require the latter to treat the mortgagor as a mere

surety for the debt, without the assent of the mortgagee (*Shepherd* v. *May*, 115 U. S. 505, 511; 6 Sup. Ct. 119, 29 L. Ed. 456), but *when the assent of the mortgagee has been given,* equity, by a *quasi* subrogation, and in order to avoid a multiplicity of suits, gives to the mortgagee the benefit of all the collateral obligations for the payment of the debt which the surety (mortgagor) holds for his indemnity. This right of the mortgagee is not the result of any contract    *    *    *. 'The equity on which this relief depends is the right of the mortgagor against his vendee, to which he is permitted to succeed by substituting himself in the place of the mortgagor.' " (Italics supplied.)

It is just here that the crucial question of law involved in the case before us arises, namely:

[5] 1. At what time, in accordance with the equitable doctrine aforesaid, is the appellant, the mortgagee, permitted to succeed to the right of Portlock, the mortgagor, against his vendee, Thacker, by substituting himself (the mortgagee) in the place of the mortgagor? At the time of suit, or at the time the appellant, at the instance of Thacker, dealt with him as the principal debtor and accepted him as such; thereby assenting to the changed relationship aforesaid of the parties—of which acceptance and assent Thacker had notice at the time?

This is an open question in Virginia.

This question was not involved and was not decided in *Osborne* v. *Cabell, supra* (77 Va. 462), or in *Crowell* v. *St. Barnabas Hospital, supra* (27 N. J. Eq. 650), relied on for appellee. In neither of these cases was there any assent of the mortgagee, before the suit was instituted, to the changed relationship of the mortgagor and mortgagee brought about by the agreement between the mortgagor and his grantee by which the latter assumed the mortgage debt and became in equity the principal debtor, as between the mortgagor and grantee. All that is said and held in those

cases in reference to the right of action of the mortgagor against the grantee at the time of suit is applicable only to cases in which prior to the time of suit the mortgagee has not assented to the changed relationship just mentioned and in which, prior to such assent as evidenced by the institution of the suit, the mortgagor has, for valuable consideration and in good faith, released the grantee from such relationship. As properly held in these and other like cases, and as must clearly be so upon principle, in such case the assent of the mortgagee to the at-one-time-existing relationship aforesaid comes too late to obtain the benefit of it, because the relationship no longer exists at the time of the assent.

In *Willard* v. *Worsham, supra* (76 Va. 392), the question we have under consideration was considered, but left undecided. There was no action of the mortgagee in that case indicating assent to the changed relationship aforesaid before the suit in equity was instituted by the mortgagee against the grantee; but there was, prior to the institution of the suit, a release of the grantee by the mortgagor, which was held to be invalid as a release, because of the insolvency of the mortgagor at the time of the giving of the release and of its being without consideration to support it. However, what is said in the opinion of the court delivered by Judge Staples, touching the question we have under consideration, is pertinent, in view of the position urged in argument for appellee, Thacker, that the doctrine aforesaid prevailing in Virginia fixes the rights and remedies of the mortgagee as those possessed by the mortgagor at the time of the institution of the suit, and that conduct of the mortgagee and the grantee in dealing directly with each other, showing the assent of the former to the changed relationship aforesaid, cannot fix the rights of the mortgagee against the grantee prior to suit brought, so that the mortgagor's subsequent *bona fide* release of the grantee supported by a valuable consideration can be held to be inoperative.

The position thus taken is that the courts in those juris-
dictions which allow an action at law by the mortgagee
against the grantee give such effect to such assent of the
mortgagee; but that it would be violative of the very prin-
ciple on which the doctrine aforesaid rests, which has been
adopted in Virginia, for the Virginia court to so hold. We
do not so view the subject, and we are strengthened in our
view by the consideration that in the opinion delivered by
Judge Staples in *Willard* v. *Worsham* he perceived no in-
consistency which would have arisen from a holding by the
Virginia court that the remedy in this class of cases is in
equity only and yet holding that the undertaking of the
grantee becomes irrevocable under some circumstances be-
fore suit brought; such opinion indeed, going even to the
length of favorably considering applying in Virginia the
extreme rule applied in the later cases in New York, and
in other States, where the action at law is held to lie, that
"where the conveyance to the grantee is absolute and un-
conditional, in consideration of which he undertakes to pay
the mortgage debt as a part of the purchase money, the
undertaking is irrevocable and the mortgagee is at once
vested with the right to enforce the covenant—a right which
cannot be defeated by a rescission of the contract between
the mortgagor and the purchaser." And this opinion clearly
shows that the court did not consider that there was
anything inconsistent in principle in applying in Virginia
the rule that the time of assent by the mortgagee, to the
changed relationship aforesaid of the parties, whether be-
fore, or at the time of and as indicated by suit brought, is
the time at which the respective rights and remedies of the
parties are irrevocably fixed. After reviewing the authori-
ties on the subject of whether an action at law will lie in
such class of cases, referring, among others, to *Ross* v.
*Milne,* 12 Leigh (39 Va.) 204, 37 Am. Dec. 646, also
cited in *Thacker* v. *Hubard, supra* (122 Va., at p. 394,

94 S. E. 929), in which the holding was that an action
at law in such class of cases will not lie; the opinion
then proceeds to deal with the jurisdiction in equity and
the doctrine aforesaid upon which it rests, and holds that
the court had jurisdiction of the case in equity. There-
upon, on the subject of when a release of the grantee by the
mortgagor will be binding on the mortgagee, this is said:
"I admit that the authorities are very conflicting upon this.
very perplexing question. In some of the cases it is held
that where the grantee, by his conduct, assumes the pay-
ment of the mortgage debt for the indemnity of the mort-
gagor, and not for the better security of the mortgagee, the
parties may abandon the contract at any time they see fit,
unless it appears that the mortgagee, relying upon the in-
demnity has placed himself in a position from which he can-
not retreat without loss, in case the agreement is not per-
formed. In other cases, it has been held that where the
grantee has assumed the payment of the mortgage debt, *and
the mortgage creditor has notice of it and assents to it, his
right of action cannot be defeated by a release to the gran-
tor.* (Italics supplied).

:    *    *    *    *    *    *    *    *    *

"It seems to me there is great force in the doctrine held
by the New York courts" (above referred to, which is a dif-
ferent and more extreme doctrine than that referred to in
the italicized portion of the quotation just made), "because
the grantee having assumed the payment of the mortgage
debt, and retaining the absolute ownership and possession
of the mortgaged estate, he, to that extent, diminishes the
resources of the mortgage debtor and his means of pay-
ment, and he ought not to be permitted to evade a just re-
sponsibility by any acquittance or discharge obtained from
the mortgage debtor. Whether he might do so, upon a
rescission of the contract out and out and a reconveyance
of the estate *before the rights of the creditor have been*

*recognized* or asserted, is another question not before us."
(Italics supplied.)

And when we examine the decisions in the States other
than Virginia in which it is held that the action at law will
not lie; that the remedy under consideration is in equity
alone; and that the relief must be given in equity upon the
application of the equitable doctrine aforesaid; we find
nothing in them against, and, in some instances, especially
in New Jersey, where the holding that the jurisdiction is in
equity alone seems to have originated, much in favor of the
view that the equitable rights of the mortgagee under that
doctrine become fixed and irrevocable the moment the mort-
gagee assents to the new relationship aforesaid, or cer-
tainly when he both assents to it and the grantee has notice
that he does so.

We find the following holdings in New Jersey on this
subject: In *Youngs* v. *Trustees,* 31 N. J. Eq. 290, at pp.
299-300, this is said: " * * *Where the mortgagee has ac-
quired no independent equity arising from the dealings be-
tween him and the subsequent grantee* of the mortgaged
premises, and stands *exclusively* on the engagement of the
grantee with his grantor to assume and pay the mortgage
debt, he cannot have the benefit of that contract if it has,
before bill filed, been released and discharged in good faith
by those who were the parties to it." And further on,
speaking of such a release, it is said that it "will operate
as a complete extinguishment, unless, *in the meantime, some
equitable right in it has arisen in favor of third persons.*"
(Italics supplied.)

In *Crowell* v. *St. Barnabas Hospital, supra* (27 N. J. Eq.
at p. 658), this is said: *"There may be circumstances in
the dealings of the subsequent purchaser with the mort-
gagee * * which will give the mortgagee an independent
equity to have his mortgage paid by the grantee of the
mortgaged premises.* But where, as in this case, no such

circumstances appear, and the mortgagee stands *exclusively* on the promise of the grantee to the mortgagor, he is not entitled to relief if the contract has in good faith been released by those who were parties to it." (Italics supplied.)

In New Jersey, under its later procedure, there must be a separate suit to foreclose a mortgage, which must precede the suit for deficiency; decree for the deficiency cannot be entered in the foreclosure suit; and in *Field* v. *Thistle,* 58 N. J. Eq. 339, at p. 343, 43 Atl. 1072, at p. 1073, this is said: "* * * although the decree for deficiency cannot now be obtained in the foreclosure suit, yet the commencement of a suit for foreclosure, to which the defendants assuming the mortgage are properly made parties as ultimately liable for the deficiency, is, in my judgment, such an acceptance of their obligation and action thereon as the mortgagee is entitled to rely on as fixing his right to enforce the covenant and terminate the right to release by the voluntary act of the parties. * * * Bringing an action to foreclose and claim therein for deficiency is such an adoption of the covenant by the mortgagee as terminates the right to release."

In Indiana, where the procedure is statutory, but where the remedy in the class of cases we have under consideration is allowed upon the ground of equitable subrogation aforesaid, it is held that where the mortgagee has notice of the assumption of the debt by a grantee and accepts the grantee as debtor and the grantee has notice of that fact, the obligation of the grantee thereupon becomes irrevocable, so that after such acceptance the mortgagor has no longer any right to release the grantee from the obligation to the mortgagee. *Talburt* v. *Berkshire Life Ins. Co.,* 80 Ind. 434; *Berkshire Life Ins. Co.* v. *Hutchings,* 100 Ind. 496; *Carnahan* v. *Tousey,* 93 Ind. 561.

As said in the case last cited, at p. 564: "The acceptance however, is a mental act, consisting simply of the determination of the party to avail himself of the contract made by

another for him.  It is therefore a logical and metaphysical impossibility that he should institute a suit on the promise without first having accepted it.  The purpose or determination to sue necessarily constitutes, if indeed it does not presuppose, an acceptance of the right to sue.  The bringing of an action is therefore sufficient and probably conclusive evidence of a previous acceptance, unless more is meant thereby than the formation of the purpose to appropriate the promise.  If more is meant, it must be not simply the fact, but notice of the acceptance, which is quite a different thing, and will be considered as we proceed.  * * * If the party for whose benefit a contract is made neglects to give notice of his acceptance of it, he incurs the peril of its abrogation, and, *if without giving such notice,* he brings an action, he may be defeated by the plea and proof of a rescission accomplished before the service of the summons, just as he may be defeated, if he does give such notice, by proof of a rescission before the notice was served.  * * The assignee of a nonnegotiable promissory note, by failure to give notice of the assignment to the maker, may in like manner lose the right of action acquired by the assignment; but a complaint upon such note by an assignee need not, for that reason, allege the giving of such notice.  There seems to be no reason for a different rule in respect to a contract of assumption by one person of the debt of another, which by a *quasi* assignment of liability is accomplished."

And when we consider the decisions in the States which hold that the action in the class of cases we are considering will lie at law—which is the rule generally prevailing—we find that the recovery is permitted on either of two grounds.  As stated in 2 Jones on Mortgages (7th ed.), sec. 762, the mortgagee is "allowed to recover in a suit at law against the purchaser who has assumed the debt, upon the ground of equitable subrogation, or that the transaction amounts to a novation."  We see, therefore, that the recovery is al-

lowed at law in some of the States in the same circumstances which give rise to the cause of action in equity in those States allowing the remedy in equity alone. Among these decisions, however, there is a decided cleavage in this: Some of them hold that "where the conveyance is absolute to the grantee, his assumption of an existing mortgage creates against him an absolute obligation for its payment, and a release of this obligation cannot be made by the grantor without the assent of the mortgagee. The acceptance on the part of the mortgagee of the benefit of the assumption is a legal presumption, in the absence of proof, of his actual assent." 2 Jones on Mortgages, sec. 764. Whereas, others of the decisions allowing the action at law hold that affirmative evidence of an actual acceptance and adoption by the mortgagee of the agreement of the purchaser, by which the mortgagee is considered to have made himself a party to the agreement—brought himself into privity with it—is necessary to give the right of action and to fix that right irrevocably. See decisions cited in notes to sections 763a, 764 of the learned work last referred to.

*Gifford* v. *Corrigan,* 117 N. J. 257, 22 N. E. 756, 6 L. R. A. 610, 15 Am. St. Rep. 508, involves a release of the grantee from his liability on the clause in his deed assuming payment of a mortgage debt, the release being executed after the mortgagee knew of the clause in the deed and had assented to it and adopted it as a security for his own benefit; and the question was whether the obligation of the grantee in the deed was revocable thereafter. In the opinion of the court this is said: "My judgment leads me to answer that question in the negative. Of course it is difficult, if not impossible, to reason about it without recurring to *Lawrence* v. *Fox,* 20 N. Y. 268" (which, contrary to earlier decisions in that State, held that the action in such case by the mortgagee against the grantee would lie at law), "and ascertaining the principles upon which its

doctrine is founded.  That is a difficult task, especially for one whose doubts are only dissipated by its authority, and becomes more difficult when the number and variety of its alleged foundations are considered.  But whichever of them may ultimately prevail, I am convinced that *they all involve, as a logical consequence, the irrevocable character of the contract after the creditor has accepted and adopted it, and in some manner acted upon it.*  The prevailing opinion in that case rested the creditor's right upon the broad proposition that the promise was made for his benefit, and therefore he might sue upon it, although privy neither to the contract nor its consideration.  That view of it necessarily involves an acquisition at some moment of time of the right of action which he is permitted to enforce.  If it be possible to say that he does not acquire it at the moment when the promise for his benefit is made, *it must be that he obtains it when it has come to his knowledge and he has assented to it and acted upon it;* for he may sue. That is decided and is conceded.  *If he may sue, he must at that moment have a vested right of action.  If he has not obtained it earlier,* it must have vested in him at the moment when his action was commenced; so that the right and the remedy were born at the same time.  *But there is no especial magic in a law suit.*  If it serves for the first time to originate the right which it seeks to enforce, *it can only be because the act of bringing it shows unequivocably that the promise of the grantee has come to the knowledge of the plaintiff; that the latter has accepted and adopted it; that he intends to enforce it for his own benefit, and gives notice of that intention to the adversary.  From that moment he must be assumed to act, or omit to act, in reliance upon it. But if all these things occur before a suit commenced, why do they not equally vest the right of action in the assignee? What more does the mere lawsuit accomplish?*  And so the contract between the grantor and grantee, if revocable ear-

4

lier, ceases to be so when by his assent to it and adoption of it the creditor brings himself into privity with it, and elects to avail himself of it, and must be assumed to have governed his conduct accordingly. I see no escape from that conclusion." (Italics supplied.).

In *Gibson* v. *Hambleton,* 52 Neb. 601, 72 N. W. 1033, this is held: "After notice of such covenant and assent thereto by the mortgagee, his right of action thereon cannot be diverted by a voluntary rescission thereof by the contracting parties."

In Texas, where the action at law is allowed in the class of cases which we are considering, it is held that the obligation of the grantee to the mortgagee does not become irrevocable without the consent of the mortgagee until the mortgagee has in fact assented to or accepted the promise of the grantee. In *Hoeldtke* v. *Horstman,* 61 Tex. Civ. App. 148, 128 S. W. 642, there is an able and instructive opinion on the subject. After an exhaustive consideration of the desions, both in the States allowing the action at law and those on the subject. After an exhaustive consideration of the deci- "So far as our investigation has been extended, *all of the cases where this question has been involved concede that the promise of the grantee becomes irrevocable when the mortgagee has in some manner acted upon it,* with the exception of two—one in California and the other in New Jersey. *Biddell* v. *Brizzolara,* 64 Cal. 354, 30 Pac. 609; *Laing's Ex'rs* v. *Byrne,* 34 N. J. Eq. 52. * * * In those cases where it is held if the mortgagee has in some manner acted upon the promise of the grantee that the liability of the latter becomes fixed, *it is not claimed that this action must be such as would create an estoppel against the grantee.* It seems to be sufficient if it is such as to evince *an acceptance* or *an adoption of the promise by the mortgagee.*" (Italics supplied.)

In *Biddell* v. *Brizzolara,* 64 Cal. 354, 30 Pac. 609, and *La-*

*ing's Ex'rs* v. *Byrne*, 34 N. J. Eq. 52, it is true that it is held the right of the mortgagee of subrogation is lost by a rescission of the contract of sale before the commencement of suit to foreclose the mortgage, but an examination of these cases. discloses that no circumstances appear therein of dealings of the grantee with the mortgagee prior to the commencement of the suit giving the mortgagee any independent equity to have his mortgage debt paid by the grantor. So that these cases stand precisely upon the same footing as *Crowell* v. *St. Barnabas Hospital, Osborne* v. *Cabell* and other like cases above referred to.

It is true also that in 2 Jones on Mortgages, sec. 763, this is said: "Whether the grantor can deprive the mortgagee of the benefit of the covenant made by the grantee who has assumed the payment of the mortgage will in large measure depend upon the ground upon which the mortgagee is allowed to take advantage of such covenant. On the one hand, if this covenant be regarded as an agreement of indemnity against the mortgage debt, which the mortgagee may avail himself of by way of equitable subrogation, the grantor and his purchaser may *at any time before the filing a bill to foreclose the mortgage* extinguish the liability, as between themselves * * *, and as the contract of indemnity is thus put an end to by the act of the parties to it, there is then no right to which the mortgagee can be subrogated." (Italics supplied.)

But this, as appears from the authorities cited in the footnote to sustain the text, is but a statement of the general doctrine embodied in the holding in *Crowell* v. *St. Barnabas Hospital* and like cases, and, as we have seen from the consideration of these cases above, such statement of the doctrine must be qualified by the further statement made, as aforesaid, in the *Crowell* v. *St. Barnabas Hospital Case,* which is, in substance, that the filing of the bill fixes the time when the obligation of the grantee becomes irrevocable only

in those cases where no circumstances appear in the dealings of the grantee with the mortgagee prior to suit which gives the mortgagee an independent equity to have his mortgage paid by the grantee of the mortgaged premises.

[6] As said in 27 Cyc. 1360: "A contract for the assumption of a mortgage, on a sale of the mortgaged premises, may be rescinded or canceled between the parties to it, so long as the mortgagee has done nothing to show his adoption of the benefit of such contract or his acceptance of the purchaser as the principal debtor; and this may be accomplished either by a formal release or a revocation of the contract, or by a rescission of the contract of sale or reconveyance of the property. But after the mortgagee has accepted or adopted the contract, or acted upon the faith of it, it is not in the power of the parties against his rights to change or annul it." And numerous cases are cited to sustain the text, from States in which the remedy is in equity only, as well as from States in which the action at law is held to lie.

[7] In the instant case the mortgagee, the appellant, dealt directly with the grantee. Thacker, at the request of Thacker, after knowledge on the part of the appellant of Thacker's promise, and acted upon the faith of and relied upon that promise to the extent of giving Thacker an extension of time for payment of parts of the debt then owing, and these parties subsequently, in the dealings directly with each other in the matters of the payments made by Thacker in accordance with the extension of time given him as aforesaid and the acceptance of such payments by appellant, both acted upon and in accordance with the new promise of Thacker and recognized its existence. Such action we think certainly amounted to an acceptance and adoption by appellant at the time of the benefit of the promise of Thacker to pay the debt as principal debtor, of all of which Thacker then had notice. Here we have present all of the requi-

sites which any of the authorities consider essential to the acquisition of the right of action in such case, in equity or at law—namely, the mortgagee accepted and adopted the new promise as for his benefit and acted upon it in such a manner as to notify the grantee of such acceptance and adoption of such promise. From that moment, certainly in equity, even more than at law, the mortgagee must be assumed to have acted or to have omitted to act in reliance upon it. And certainly it is in entire accord with the principles of equity that the cause of action should be considered as thereupon arising in that forum. Therefore, the remedy in Virginia being in equity, we think, both upon principle and under the authorities above considered, that the circumstances above mentioned, present in the case in judgment, fixed irrevocably, as of the time just mentioned, the equitable right of the appellant to the subrogation which is the basis of the cause of action in equity in such case. Hence, the reconveyance of the property thereafter by a grantee of it to the original grantor and mortgagor and the assumption aforesaid at such subsequent time by the latter of the mortgage debt did not operate to release the prior grantee, Thacker, from his obligation aforesaid to appellant.

The case must therefore be reversed, and final decree will be entered in favor of appellant for the deficiency of $1,371.00 principal, left unpaid of the mortgage debt after the foreclosure of the deed of trust, with interest thereon from July 21, 1915, and costs.

*Reversed, and final decree.*